**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Jerry Buckley HELM, Defendant and Appellant.**

No. 12789.

Supreme Court of South Dakota.

Argued Nov. 7, 1979.

Decided Jan. 16, 1980.

Margaret Crew, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Joseph Neiles, Pennington County Asst. Public Defender, Rapid City, for defendant and appellant.

DUNN, Justice.

Defendant pled guilty to the crime of uttering a no account check. He also admitted to convictions for six previous felonies and was adjudged an habitual offender. He was sentenced to life imprisonment in the state penitentiary. Defendant appeals from this life sentence, contending that it was an abuse of discretion, that it denied him due process of law, and that it constituted cruel and unusual punishment. We affirm.

Before pleading to the primary charge, the trial court gave defendant a thorough explanation of his rights. He was informed on three occasions that his guilty plea would trigger the habitual offender statute and that he could be sentenced to life imprisonment. The defendant and the attorney representing him indicated that defendant understood his rights and the possible consequences of a guilty plea. After this explanation, defendant waived his right to a preliminary hearing, insisted on pleading guilty, refused a presentence investigation and demanded immediate sentencing. The sentence of life imprisonment followed.

The constitutionality of South Dakota's habitual offender statute was upheld in *State v. O'Connor*, 265 N.W.2d 709 (S.D. 1978). This statute permits sentencing of a person convicted of three prior felony offenses within the guidelines of a Class 1 felony. SDCL 22–7–8 and SDCL 22–7–1(2). The maximum punishment for a Class 1 felony is a life sentence.

South Dakota has adopted the rule that a sentence within the statutory limits is not reviewable on appeal, even if it is regarded as excessive. *State v. Williams*, 84 S.D. 547, 173 N.W.2d 889 (1970); *State v. Austin*, 84 S.D. 405, 172 N.W.2d 284 (1969). This court has stated, however, that a sentence may be constitutionally offensive if its duration is so excessive as to "shock the conscience." *State v. Bad Heart Bull*, 257 N.W.2d 715 (S.D.1977).

While the instant sentence is severe, it does not shock the conscience of the court. This was defendant's seventh felony conviction, and his record indicates that he had spent most of his adult lifetime behind bars. His consistent failure to reform places defendant squarely in the category of an habitual offender, and criminologists almost universally agree that the only remaining alternative is to remove such an offender from society and thus protect innocent victims from further criminal activities.

The defendant was fully informed of the possibility of a life sentence; yet he refused to accede to a presentence investigation that might have revealed mitigating factors with regard to his sentence. His main contention now is that his previous felonies involved nonviolent crimes and were due to a severe drinking problem. Our legislature did not see fit to apply the habitual offender statute solely to violent crimes, nor were alcoholics excepted from its provisions. The legislature has provided this last resort sentence for habitual criminals who refuse to learn from their mistakes or to rehabilitate themselves. The record of this defendant fits all of these criteria, and the imposition of a life sentence, while severe, is not so unusual as to shock the conscience of the court. Such a sentence has not been found

to be cruel or unusual in other jurisdictions. *Cox v. Commonwealth*, 514 S.W.2d 49 (Ky. 1974); *State v. Custer*, 240 Or. 350, 401 P.2d 402 (1965); *State v. Gibson*, 16 Wash.App. 119, 553 P.2d 131 (1976).

The judgment of the trial court is affirmed.

FOSHEIM, J., concurs.

WOLLMAN, C. J., concurs specially.

MORGAN and HENDERSON, JJ., dissent.

**WOLLMAN, Chief Justice (concurring specially).**

As Justice Henderson points out in his dissent, SDCL 24–15–4 precludes the Board of Pardons and Paroles from granting defendant a parole. This statutory bar does not foreclose the Board from playing a role in defendant's ultimate term of imprisonment, however, for SDCL 24–14–1[1] and SDCL 24–14–5[2] permit the Governor to grant to the Board a significant voice in the exercise of executive clemency. The existence of this role for the Board gives substance to the trial court's statement referred to in Justice Henderson's dissent and militates against a conclusion that the trial court was laboring under a misapprehension of law or fact that would constitute an error of constitutional magnitude similar to those giving rise to the holdings in *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); and *Crowe v. State*, 86 S.D. 264, 194 N.W.2d 234 (1972).

**MORGAN, Justice (dissenting).**

I join specially in the dissent of Henderson, Justice.

1. SDCL 24–14–1 provides: "The Governor may, by executive order, delegate to the board of pardons and paroles the authority to hear applications for pardon, commutation, reprieve, or remission of fines and forfeitures, and to make its recommendations to him."

2. SDCL 24–14–5 provides: "The Governor may submit an application for clemency to the board of pardons and paroles for its recommendation. The Governor may, by executive order,

First, I would agree that some sentences could be constitutionally invalid. However, lest we open a new flood gate of appeals on sentencing, I would anticipate that review would not be necessary except upon imposition of life imprisonment or the death penalty.

With respect to this case, I too think the trial judge went too far. I agree with the trial judge's comments as far as they went. As I read the record, he had a 36-year-old man who had spent a good part of the previous 15 years in the state penitentiary. He apparently has an alcohol problem; at least he and his counsel injected that into the record.* However, almost all the previous offenses for which he had been convicted involved money or property as did the one for which he was being sentenced. True, the law protects property and property interests, but I consider life imprisonment to be a sentence that should be reserved for offenses against persons. Certainly, such a sentence should be supported by a much more extensive record demonstrating a more compelling reason than mere recidivism and further demonstrating that the sentencing judge had imposed the maximum sentence only after contemplative deliberation considering all possible alternatives. The record before us demonstrates a rather summary decision from the bench.

I would remand for resentencing.

**HENDERSON, Justice (dissenting).**

The defendant was sentenced to life imprisonment in the South Dakota State Penitentiary after pleading guilty to a charge of uttering a no account check of $100.00 and entering an admission of guilt to being a habitual offender. SDCL 24–15–4 pro-

delegate to the board the authority to consider applications for clemency and make recommendations to him. The Governor is not bound to follow a recommendation returned by the board."

* Defendant did not consent to a presentence investigation that might have substantiated that assertion.

vides: "A person sentenced to life imprisonment is not eligible for parole by the board of pardons and paroles." Executive clemency is his only avenue of hope. As I attempt to arrive at a sense of fairness in the administration of justice in this case, this statute weighs heavily on my conscience.

At the time of sentencing, the court asked defendant if he had anything he wanted to say. He replied, "No," whereupon the court pronounced sentence.

THE COURT: Well, I guess most anybody looking at this record would have to acknowledge you have a serious problem, if you've been drinking all of this time and your prior imprisonments have not had any effect on your drinking problem, so far as motivating you for change. If you get out in the near future, you're going to be committing further crimes, so I can't see any purpose in my extending any leniency to you at all here and I intend to give you a life sentence.

It will be up to you and the parole board to work out when you finally get out, but I think you certainly earned this sentence and certainly proven that you're an habitual criminal and the record would indicate that you're beyond rehabilitation and that the only prudent thing to do is to lock you up for the rest of your natural life, so you won't have further victims of your crimes, just be coming back before Courts. You'll have plenty of time to think this one over.

The sentence of the trial court cannot be anticipatory of the compassion of the State Board of Pardons and Paroles, for when a defendant is sentenced to lifetime imprisonment, it is beyond its jurisdiction to grant parole. Nor should this court contemplate a possible commutation of sentence through a grant of executive clemency. It is incumbent upon this court to determine the propriety of such a sentence at this juncture; another branch of government should not be burdened with rectifying this injustice.

I agree with the majority opinion that the sentence is severe. It is so severe and extreme that I find it constitutionally offensive. While this court has been traditionally reluctant to disturb a sentence on appeal, we nonetheless have long recognized the vagaries that inhere in the sentencing process. We stated in *State v. Bad Heart Bull*, 257 N.W.2d 715, 720 (S.D.1977): "Although punishment by imprisonment is not per se cruel and unusual it may be constitutionally offensive when the duration of the sentence prescribed is so excessive or disproportionate to the crime as to shock 'the conscience and reason of men generally,'" citing *State v. Becker*, 3 S.D. 29, 40, 51 N.W. 1018, 1022 (1892). I do not choose to be shackled by the precedent of this court, namely, that a sentence within the statutory limits will not be disturbed on appeal. I find the language of the majority opinion especially alarming in light of the reenactment of the death penalty in this state. There are instances, though rare, where departure from this precedent is mandated. Thus, the discretion of the trial court is not boundless, nor is the function of this court merely perfunctory with regard to the review of a criminal sentence.

The United States Supreme Court has firmly embraced the concept that the Eighth Amendment bars not only punishments that are "barbaric" but also those that are "excessive" in relation to the crime committed. *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); *Trop v. Dulles*, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1957). Although the United States Supreme Court has yet to hold a sentence cruel and unusual on the basis of length alone, its reasoning has suggested that a disproportionately long sentence would not be immune from Eighth Amendment challenge. "[I]t is a precept of justice that punishment for crime should be graduated and proportioned to [the] offense." *Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793, 798 (1910).

The proscriptions embodied in the Eighth Amendment have broad application; the

clause "is not fastened to the obsolete but may acquire meaning as public opinion becomes enlightened by a humane justice." *Weems v. United States*, 217 U.S. at 378, 30 S.Ct. at 553, 54 L.Ed. at 803. As stated by Mr. Chief Justice Warren, in an oftquoted phrase, "[t]he Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. at 101, 78 S.Ct. at 598, 2 L.Ed.2d at 642. Thus, the application of the Eighth Amendment involves an assessment of contemporary values that reflect the public attitude toward a given sanction.

We must not lose sight of the basic concept of the Eighth Amendment, namely, that a penalty must accord with "the dignity of man." *Trop v. Dulles*, supra. This has been interpreted to mean in one respect that the punishment not be "excessive." *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Under *Gregg*, a punishment is "excessive" and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the pointless infliction of suffering; or (2) is grossly disproportionate to the severity of the crime.

In *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973), *cert. denied*, 415 U.S. 983, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974), the Fourth Circuit set forth four factors, central to the Supreme Court's major decisions applying the cruel and unusual punishment clause, in determining whether the length of the sentence imposed under the West Virginia recidivist statute was cruel and unusual because it was grossly disproportionate to the crimes involved. The Fourth Circuit considered cumulatively: (1) the nature of the offense; (2) the legislative intent behind the punishment; (3) the punishment defendant would have received in other jurisdictions; and (4) the punishment meted out for other offenses within the same jurisdiction. The analysis in *Hart* was adopted by the Fifth Circuit in *Rummel v. Estelle*, 568 F.2d 1193 (5th Cir. 1978).

The factual situations in both *Hart* and *Rummel* bear a striking resemblance to the instant case. The Fifth Circuit concluded that Rummel's life sentence for the three crimes of obtaining money under false pretenses, intent to defraud, and passing a forged instrument was so grossly disproportionate to the offense as to constitute cruel and unusual punishment in violation of the Eighth Amendment. Likewise, in *Hart*, the court held that life imprisonment based on defendant's convictions of committing perjury, writing a check on insufficient funds and interstate transportation of forged checks was constitutionally excessive and wholly disproportionate to the nature of the offenses committed, and not necessary to achieve any legitimate legislative purpose.

A life sentence in South Dakota, at the time sentence was imposed herein, could be imposed on any person convicted of a Class A felony (murder) and upon any person convicted of a Class 1 felony (manslaughter in the first degree, kidnapping, arson in the first degree). Although I do not condone the issuance of worthless checks, I think it is significant that this case involves one of the most passive felonies a person could commit. The trial court equated the gravity of this offense with the most serious felonies in our state. This is why I believe it is vastly disproportionate to the crime committed and shocking to the "conscience and reason of men generally."

Defendant was previously convicted of six felonies: three third-degree burglaries; obtaining money under false pretenses; grand larceny; and a felony DWI. Defendant is an alcoholic; in each prior conviction, alcohol had contributed to his problems with law and society. In describing the facts leading to his conviction in this case, defendant stated: "I was working in Sioux Falls, and got my check that day, was drinking and I ended up here in Rapid City with more money than I had when I started. I knew I'd done something I didn't know exactly what. If I would have known this, I would have picked the check up. I was drinking and didn't remember, stopped several places."

The defendant's history and the facts of this case mitigate against a prison cell for life. I do not presume to fully address the complex socio-philosophical questions presented by this case; whether imprisonment is intended to serve a rehabilitative, retributive, or deterrent purpose, I leave to the legislature and sociologists. Neither is it my role to say what effect a defendant's recidivism should properly have upon the sentencing process. I simply point out that all defendant's offenses were alcohol-related and involved money or property. He has been in and out of our state penitentiary several times. Notwithstanding, he has remained an alcoholic and compulsive check writer. Does justice require that after a certain point is reached, we just turn the key—lock the defendant up to languish in prison for a lifetime—and close the final chapter on his life? I cannot agree that justice dictates this result.

The sentence imposed is so excessive that it reaches constitutional dimension. I would reverse and remand the case for the limited purpose of resentencing this defendant proportionate to the offense. Defendant, if he rehabilitates himself, should at least be given an opportunity to obtain parole during his lifetime.