Jerry HELM, Appellant,

v.

Herman SOLEM, etc., Appellee.

No. 82–1039.

United States Court of Appeals,
Eighth Circuit.

Submitted April 23, 1982.

Decided Aug. 4, 1982.

Certiorari Granted Nov. 8, 1982.
See 103 S.Ct. 339.

John J. Burnett, Rapid City, S. D., for appellant.

Grant Gormely, Asst. Atty. Gen., Pierre, S. D., for appellee.

Before LAY, Chief Judge, BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

Jerry Buckley Helm appeals from the denial of his petition for a writ of habeas corpus. He asserts that the sentence he received as an habitual offender, life imprisonment without parole, constitutes cruel and unusual punishment. We agree, and, accordingly, reverse and remand for further proceedings consistent with this opinion.

## I. Background.

Helm entered a guilty plea to a felony charge of uttering a "no account" check for $100. Against the advice of counsel, Helm also admitted to six prior felony convictions [1] and, as a result, was sentenced as an habitual offender.[2]

1. The six prior felonies included three convictions for third-degree burglary, and one conviction each for a third offense for driving while intoxicated, grand larceny, and obtaining money under false pretenses.

2. At the time of Helm's conviction, South Dakota's habitual offender statute read:

*Three or more prior felony convictions—Sentencing as for Class 1 felony.* When a defendant has been convicted of at least three prior convictions in addition to the principal felony, the sentence for the principal felony shall be enhanced to the sentence for a Class 1 felony. [S.D. Codified Laws Ann. § 22–7–8 (1979).]

The record indicates that Helm, age thirty-six at the time of his conviction, is an alcoholic and has spent much of the last fifteen years in the South Dakota State Penitentiary. *State v. Helm*, 287 N.W.2d 497, 499 (S.D.1980). Alcohol contributed to Helm's actions leading to this conviction and each of his prior convictions. In describing the facts prior to his guilty plea to the bad check charge, Helm stated:

"I was working in Sioux Falls, and got my check that day, was drinking and I ended up here in Rapid City with more money than I had when I started. I knew I'd done something I didn't know exactly what. If I would have known this, I would have picked the check up. I was drinking and didn't remember, stopped several places." [*State v. Helm, supra,* 287 N.W.2d at 501.]

Following entry of his guilty plea, Helm waived his right to a presentence investigation and requested immediate sentencing. The state trial judge acceded to his request and made the following statement in pronouncing Helm's life sentence from the bench:

"Well, I guess most anybody looking at this record would have to acknowledge you have a serious problem, if you've been drinking all this time and your prior imprisonments have not had any effect on your drinking problem, so far as motivating you for change. If you get out in the near future, you're going to be committing further crimes, so I can't see any purpose in my extending any leniency to you at all here and I intend to give you a life sentence.

It will be up to you and the parole board to work out when you finally get out,[3] but I think you certainly earned this sentence and certainly proven that you're an habitual criminal and the record would indicate that you're beyond rehabilitation and that the only prudent thing to do is to lock you up for the rest of your natural life, so you won't have further victims of your crimes, just be coming back before Courts. You'll have plenty of time to think this one over." [*State v. Helm, supra,* 287 N.W.2d at 500.]

The statute in effect at the time of Helm's sentencing provided that "[a] person sentenced to life imprisonment is not eligible for parole by the board of pardons and paroles." S.D. Codified Laws Ann. § 24–15–4 (1979). Thus, by imposing a life sentence, the sentencing judge committed Helm to the state penitentiary for the remainder of his natural life, barring a pardon or commutation of his sentence.

Helm appealed from his sentence, contending that the imposition of a sentence of life imprisonment without parole denied him due process and constituted cruel and unusual punishment. The Supreme Court of South Dakota, with two justices dissenting, affirmed the judgment of the trial court. *State v. Helm, supra.*

Helm then petitioned for a writ of habeas corpus in federal district court alleging that his sentence constituted cruel and unusual punishment, and that the sentencing procedure violated his right to due process because the judge imposed the maximum sentence allowed by law without a presentence investigation. The State filed an answer to Helm's petition, and the district court denied the petition without a hearing. In a

---

**3.** It is unclear whether the sentencing judge believed that Helm would become eligible for parole under his life sentence, or whether the sentencing judge's reference to the parole board reflected his recognition that South Dakota statutes allow the Governor to delegate to the board of pardons and paroles certain functions regarding executive clemency. Those statutes provide:

The Governor may, by executive order, delegate to the board of pardons and paroles the authority to hear applications for pardon, commutation, reprieve, or remission of fines and forfeitures, and to make its recommendations to him. [S.D. Codified Laws Ann. § 24–14–1 (1979).]

The Governor may submit an application for clemency to the board of pardons and paroles for its recommendation. The Governor may, by executive order, delegate to the board the authority to consider applications for clemency and make recommendations to him. The Governor is not bound to follow a recommendation returned by the board. [*Id.* § 24–14–5.]

memorandum opinion, the district court determined that Helm had effectively waived any right to a presentence investigation, and that *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), disposed of Helm's claim that the sentence imposed constituted cruel and unusual punishment. Helm filed this appeal.

## II. *Discussion.*

On appeal, Helm presses only his claim that a life sentence without parole under the circumstances of this case violates his constitutional right to be free from cruel and unusual punishment.[4] Helm contends that *Rummel v. Estelle* does not control this case, because the life sentence imposed on Rummel carried with it the possibility of parole. We agree that *Rummel* is not dispositive.

In *Rummel,* the Supreme Court upheld the imposition of a mandatory life sentence under Texas' recidivist statute upon Rummel's felony conviction for obtaining $120.75 by false pretenses. At the time, Rummel had two prior felony convictions— passing a forged check in the amount of $28.36, and fraudulently using a credit card to obtain $80 worth of goods or services. 445 U.S. at 265–66, 100 S.Ct. at 1134–35. Rummel challenged his life sentence on the ground that it violated the proscription of the eighth and fourteenth amendments against cruel and unusual punishment because it was so grossly disproportionate to the severity of his crime. The Court rejected the disproportionality analysis urged by Rummel, concluding that the task of drawing lines between one term of years and a shorter or longer term of years properly belonged to the legislature, not the courts. *Id.* at 275–76, 100 S.Ct. at 1139–40. The Court stated that:

one could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative. [*Id.* at 274, 100 S.Ct. at 1139 (footnote omitted).]

The Court in *Rummel,* however, did not totally reject the idea that a term of imprisonment might be so disproportionate to the offense as to be unconstitutional. The plurality noted: "This is not to say that a proportionality principle would not come into play in the extreme example mentioned by the dissent, * * * if a legislature made overtime parking a felony punishable by life imprisonment." *Id.* at 274 n.11, 100 S.Ct. at 1139. More importantly for the analysis in this case, the Court distinguished the life sentence at issue in *Rummel* from a life sentence without parole.

Texas, we are told, has a relatively liberal policy of granting "good time" credits to its prisoners, a policy that historically has allowed a prisoner serving a life sentence to become eligible for parole in as little as 12 years. * * * We agree with Rummel that his inability to enforce any "right" to parole precludes us from treating his life sentence as if it were equivalent to a sentence of 12 years. Nevertheless, because parole is "an established variation on imprisonment of convicted criminals," *Morrissey v. Brewer,* 408 U.S. 471, 477 [92 S.Ct. 2593, 2598, 33 L.Ed.2d 484] (1972), a proper assessment of Texas' treatment of Rummel could hardly ignore the possibility that he will not actually be imprisoned for the rest of his life. If nothing else, the possibility of parole, however slim, serves to distinguish Rummel from a per-

---

4. Helm exhausted his state remedies on both claims asserted in his federal habeas petition. The South Dakota Supreme Court considered and rejected his contentions that the state trial judge denied him due process by imposing a life sentence on the basis of inadequate information, and that such a sentence constituted cruel and unusual punishment. *State v. Helm, supra,* 287 N.W.2d at 498. Helm presented both claims in his habeas petition in federal

district court. In its memorandum opinion, the district court stated that it was "satisfied that the Petitioner has exhausted his state remedies." *Helm v. Solem,* No. CIV81–5148, slip op. at 1 (D.S.D. Dec. 12, 1981). Although Helm does not pursue his due process claim on appeal, he has complied with the total exhaustion rule recently announced by the Supreme Court in *Rose v. Lundy,* —— U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

son sentenced under a recidivist statute like Mississippi's, which provides for a sentence of life without parole upon conviction of three felonies including at least one violent felony. See Miss.Code Ann. § 99–19–83 (Supp.1979). [*Id.* at 280–81, 100 S.Ct. at 1142–43.]

The State in this case contends, however, that no meaningful distinction exists between a life sentence with parole and one without parole. It relies on *Hutto v. Davis,* —— U.S. ——, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (*per curiam*), to support its contention that a disproportionality analysis does not apply in noncapital cases. There, the Court upheld the imposition of two consecutive twenty-year sentences upon Davis' convictions for possession and distribution of less than nine ounces of marijuana. In rejecting Davis' cruel and unusual punishment claim, the Court stated that:

> *Rummel* stands for the proposition that federal courts should be "reluctan[t] to review legislatively mandated terms of imprisonment," *id.* at 274, 100 S.Ct., at 1139, and that "successful challenges to the proportionality of particular sentences" should be "exceedingly rare," *id.*

at 272, 100 S.Ct., at 1138. [102 S.Ct. at 705 (footnote omitted).]

We recognize that *Rummel* and *Davis* caution federal judges against imposing their subjective views of sentencing upon the states when reviewing claims that state sentences constitute cruel and unusual punishment because of their length. Neither case, however, addressed the precise issue before us. Davis received consecutive sentences for a definite term of years. More significantly, the sentences imposed upon both Rummel and Davis carried the prospect of parole.[5] By contrast, Helm must serve the rest of his life behind bars.[6]

■ A life sentence without parole differs qualitatively from a sentence for a term of years or a life sentence with the prospect of parole. As with the death penalty, the State totally rejects rehabilitation as a basic goal of our criminal justice system by imposing a life sentence without parole. Because a life sentence without parole differs in kind from other sentences of imprisonment, the constitutional prohibition against cruel and unusual punishment

---

**5.** The Supreme Court noted that under Texas' relatively liberal policy of granting good time credits, a prisoner with a life sentence could become eligible for parole in 12 years. *Rummel v. Estelle, supra,* 445 U.S. at 280, 100 S.Ct. at 1142.

In *Davis'* case, it appears that he would become eligible for parole upon serving one-third of his sentence. *See* W.Va.Code § 62–12–13 (Supp.1981).

**6.** The State contends that the possibility of commutation of Helm's sentence to a term of years with the possibility of parole brings the sentence in this case within the holding of *Rummel.* We recognize that the frequency with which a state's executive exercises its power of clemency might affect our disposition of this case. *See Terrebonne v. Blackburn,* 646 F.2d 997, 1000 (5th Cir. 1981) (*en banc*); *Britton v. Rogers,* 631 F.2d 572, 578 (8th Cir. 1980), *cert. denied,* 451 U.S. 939, 101 S.Ct. 2021, 68 L.Ed.2d 327 (1981). In a similar case, the Fifth Circuit took judicial notice of statistics on the frequency of commutations. *Terrebonne v. Blackburn, supra,* 656 F.2d at 1000 & n.4. At oral argument, therefore, we asked counsel for the State to supply us with statistics on commutations of life sentences in South Dakota.

We have reviewed the information supplied and conclude that the possibility of a commutation for Helm is entirely too speculative to equate his life sentence with that in *Rummel.* The statistics indicate that 22 prisoners in the South Dakota penitentiary had their life sentences commuted between 1964 and 1975. The statistics, however, do not indicate what percentage of requests during this same time period were denied. Moreover, since 1975, the Governor of South Dakota has commuted no life sentences but has denied requests for commutation of life sentences from 25 prisoners, including Helm. This case, therefore, differs from *Britton v. Rogers, supra,* 631 F.2d at 578, in which we noted that the Governor of Arkansas had commuted 30 life sentences to terms of years between 1974 and 1979.

On this record, we decline to equate the possibility of commutation with the possibility of parole in *Rummel.* *Cf. Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981) (decision to commute long-term sentence does not depend upon objective factfinding, but upon purely subjective evaluations of those entrusted with that decision).

requires that it bear some relationship to the severity of the underlying crime.[7]

In comparing the length of sentence in this case to the offense, we remain mindful of the Supreme Court's admonition that a determination that a particular punishment is excessive should depend upon objective factors to the maximum extent possible. *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977). Accordingly, we take into account the collective judgment of the fifty state legislatures and the nature of the offense [8] in evaluating the appropriateness of Helm's life sentence without parole. We recognize that some state will always bear the distinction of treating particular offenders more severely than any other state. *See Rummel v. Estelle, supra,* 445 U.S. at 282, 100 S.Ct. at 1143. When a disproportionality analysis is appropriate, however, the punishment that other states authorize for similar offenses provides an objective backdrop against which to judge the sentence under attack. *See Coker v. Georgia, supra,* 433 U.S. at 593–96, 97 S.Ct. at 2866–68.

■ Helm could have received a life sentence without parole for his offense in only one other state, Nevada.[9] Other states either do not authorize such a drastic sanction for habitual offenders,[10] or require at least one prior felony conviction for a violent crime as a prerequisite to a sentence of life imprisonment without parole.[11] Because Helm had no prior convictions for violent crimes, *see supra* note 1,[12] he contends that life imprisonment without parole is grossly disproportionate to the severity of his offense. Based on our comparison of the laws of the other states, we agree. By refusing to impose a life sentence without parole upon habitual offenders or by reserving

---

**7.** We recognize, of course, that a life sentence without parole also differs qualitatively from the death penalty. *See Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (plurality opinion). Therefore, in imposing such a sentence the procedures need not correspond exactly to those required for imposing the death penalty. *See Terrebonne v. Blackburn, supra,* 646 F.2d at 1008 (Frank Johnson, Jr., J., dissenting).

**8.** In examining the nature of the offense, we look at the principal felony, uttering a no account check, in the context of a state's recidivist scheme. In so doing, we consider the nature of the prior felonies and the circumstances surrounding Helm's prior crimes.

**9.** Nevada authorizes a sentence of life imprisonment with or without the possibility of parole for a person convicted of a felony or a crime in which intent to defraud is an element, if the person has three prior convictions. *See* Nev.Rev.Stat. § 207.010 (1981).

**10.** *See, e.g.,* Ariz.Rev.Stat.Ann. § 13–604 (Supp.1981); Idaho Code §§ 19–2514, 20–223 (1979 & Supp.1981); Ky.Rev.Stat. § 532.080 (Supp.1980); Mass.Gen.Laws Ann. ch. 127, § 133B (1974); R.I.Gen.Laws § 12–19–21 (1981); S.C.Code Ann. § 17–25–40 (1977); Utah Code Ann. §§ 77–27–3, 27–11 (Utah Supp.1981); Vt.Stat.Ann. tit. 13, § 11 (1974), tit. 28 § 501(a) (1981); Wash.Rev.Code Ann. §§ 9.92.090, 9.95.040(3) (1977).

**11.** *See* Ala.Code § 13A–5–9(c)(3) (Supp.1981) (violent felonies and treason); Ark.Stat.Ann. § 43–2328.1 (1977) (murder, rape, carnal abuse, or kidnapping); Del.Code Ann. tit. 11, § 4214 (1979) (specified violent felonies); Ill. Ann.Stat. tit. 38 ¶ 33B–1, 1003–3–3(d) (Smith-Hurd Supp.1981) (murder or class X felony); La.Rev.Stat.Ann. § 15:529.1(A)(2)(b) (1981) (burglary of pharmacy, aggravated battery, robbery, aggravated escape); Md.Code Ann. art. 27, § 643B (1982) (crimes of violence); Miss.Code Ann. § 99–19–83 (Supp.1981) (one violent felony).

Alaska, Tennessee, and Wyoming appear to authorize life sentences without parole for certain nonviolent crimes. For example, Alaska authorizes such a sentence for certain habitual drug offenders. Alaska Stat. § 17.10.200(c)(3) (1975). Tennessee provides for such a sentence for certain violent and infamous crimes as well as certain drug convictions. Tenn.Code Ann. §§ 40–2801,—2806 (1975). And Wyoming authorizes a life sentence, apparently without parole, for a person convicted of four felonies. Wyo.Stat. §§ 6–1–110, 7–13–402 (1977). Helm's crime, however, would not have constituted a felony under Wyoming's bad check statute. *See* Wyo.Stat. § 6–3–124 (Supp.1981).

**12.** Helm had three third-degree burglary convictions. The record, however, fails to disclose that those crimes involved any violence. Moreover, third-degree burglary in South Dakota constitutes a crime against property, not persons, inasmuch as it entails entry of an unoccupied structure, S.D.Codified Laws Ann. § 22–32–8 (1979).

 

such a sentence for habitual offenders whose felonies include at least one crime of violence,[13] the overwhelming majority of states indicate the inappropriateness of such a sentence in the circumstances of this case.[14]

■ An examination of the circumstances surrounding each of Helm's prior felony convictions indicates that a life sentence without parole is grossly disproportionate. In each of his crimes alcohol was a contributing factor. Although Helm's alcoholism does not excuse his failure to bring his conduct within the social norms prescribed by the criminal law, it is nonetheless a condition amenable to treatment. *See Powell v. Texas*, 392 U.S. 515, 562, 88 S.Ct. 2145, 2169, 20 L.Ed.2d 1254 (1968) (Fortas, J., dissenting). To forsake rehabilitation by imposing a life sentence without parole on an individual whose alcoholism has caused him to run afoul of the law, does not accord with "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 596 (1958).[15] Accordingly, we conclude that a life sentence without parole in the circumstances of this case is so grossly disproportionate to the nature of the offense that its imposition constitutes cruel and unusual punishment in violation of the eighth and fourteenth amendments.[16]

We reverse and remand with directions to issue the writ if, within sixty days following the issuance of our mandate, the State has not resentenced Helm.[17]

13. We recognize that the Supreme Court refused to distinguish between crimes of violence and property crimes in *Rummel*. 445 U.S. at 283 n.27. The Court declined to make such a distinction, however, because it totally rejected the application of a disproportionality analysis in that case. Because the principle of proportionality applies in this case, we believe that the absence or presence of violence provides an appropriate criterion with which to compare Helm's sentence to sentences authorized by other states.

14. We note that at least two courts have upheld life sentences without parole for drug convictions not involving actual violence. *See Terrebonne v. Blackburn*, 646 F.2d 997 (5th Cir. 1981) (*en banc*); *United States v. Valenzuela*, 646 F.2d 352 (9th Cir. 1981). In *Terrebonne*, however, the majority equated the distribution of heroin with crimes of violence. 646 F.2d at 1002. And in *Valenzuela*, the court upheld the sentence because "the district court exercised its discretion under 21 U.S.C. § 848 in imposing a life sentence, based upon its finding of a long-term, large-scale, highly profitable drug operation." 646 F.2d at 354 n.1 (citation omitted).

To the extent that the crimes in *Terrebonne* and *Valenzuela* differ from the relatively minor property offenses at issue here, we believe those cases may be distinguished. To the extent that those cases rejected a disproportionality analysis in reviewing a life sentence without parole, however, we decline to follow them.

15. We recognize that life sentences without parole do not invariably violate the proscription against cruel and unusual punishment. *See Schick v. Reed*, 419 U.S. 256, 267, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974) (no-parole condition attached to commutation of death sentence for murder); *Gov't. of Virgin Islands v. Gereau*, 592 F.2d 192, 195 (3d Cir. 1979) (conviction and sentence for eight counts of first-degree murder eliminated possibility of parole); *Moore v. Cowan*, 560 F.2d 1298, 1303 (6th Cir. 1977), *cert. denied*, 435 U.S. 929, 98 S.Ct. 1500, 55 L.Ed.2d 525 (1978) (life sentence without parole for rape conviction). In the circumstances of this case, however, considering the nature of Helm's offense and the punishments imposed for similar offenses in other states, the imposition of such a sentence violates the Constitution.

16. The State points out that the life sentence imposed upon Helm is discretionary, and argues that a discretionary sentence is less harsh than a mandatory one. The discretionary nature of a sentence alone, however, cannot insulate a particular sentence from constitutional attack. The proscription against cruel and unusual punishment applies equally to sentences mandated by legislatures and those imposed by courts. *See Furman v. Georgia, supra*, 408 U.S. at 241, (Douglas, J., concurring).

17. Although we recognize that Helm waived his right to a presentence investigation in the previous proceeding, we suggest that the state court conduct a presentence investigation before resentencing Helm.