**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TERRY EUGENE IVERSEN,

*Petitioner-Appellant*,

v.

DAVE PEDRO,

*Respondent-Appellee*.

No. 22-35076

D.C. No. 2:20-cv-01524-AA

OPINION

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted December 7, 2023
Portland, Oregon

Filed March 27, 2024

Before: Jacqueline H. Nguyen and Eric D. Miller, Circuit
Judges, and Frank Montalvo,[*] District Judge.

Opinion by Judge Montalvo

---

[*] The Honorable Frank Montalvo, United States District Judge for the
Western District of Texas, sitting by designation.

# SUMMARY[**]

## Habeas Corpus

The panel affirmed the district court's denial of Terry Eugene Iversen's 28 U.S.C. § 2254 petition for a writ of habeas corpus in a case in which the district court rejected Iversen's claim that a life without parole (LWOP) sentence, imposed after Iversen pleaded guilty to public indecency, was grossly disproportionate to his offense in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

Applying the demanding standard required by the Antiterrorism and Effective Death Penalty Act, and acknowledging that some fair-minded jurists may disagree on the correctness of Iversen's LWOP sentence, the panel held that the Oregon state court's decision concerning Iversen's sentence is not contrary to the Supreme Court's Eighth Amendment jurisprudence. The panel could not conclude that Iversen's sentence raises an inference of gross disproportionality, and held that the sentence pursuant to Oregon's legislatively-mandated sex offender recidivism statute is not constitutionally infirm in light of the gravity of Iversen's offense and criminal history.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Stephen R. Sady (argued), Chief Deputy Federal Public Defender; Tihanne K. Mar-Shall, Assistant Federal Public Defender; Federal Public Defender's Office, Portland, Oregon; for Petitioner-Appellant.

Rolf C. Moan (argued), Senior Assistant Attorney General; Benjamin Gutman, Solicitor General; Ellen F. Rosenblum, Oregon Attorney General; Oregon Department of Justice, Office of the Oregon Attorney General (Salem), Salem, Oregon; for Respondent-Appellee.

Walter Fonseca, Oregon Justice Resource Center, Portland, Oregon, for Amicus Curiae Oregon Justice Resource Center.

**OPINION**

MONTALVO, District Judge:

Oregon inmate Terry Eugene Iversen appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. He maintains the district court erred in rejecting a claim that a life without parole (LWOP) sentence imposed after he pleaded guilty to public indecency was grossly disproportionate to his offense.

I

We have jurisdiction over Iversen's appeal under 28 U.S.C. §§ 1291 and 2253. We review *de novo* the district court's denial of his habeas petition. *Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014). But we are constrained by the Antiterrorism and Effective Death Penalty Act (AEDPA), which governs habeas review of state convictions. *Valerio v.*

*Crawford*, 306 F.3d 742, 763 (9th Cir. 2002) (en banc). Under AEDPA, we must defer to the last state court's reasoned decision on any claim that was adjudicated on the merits unless that decision is (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Applying AEDPA's "demanding" standard, we affirm the district court's denial of Iversen's habeas petition. *Brown v. Davenport*, 596 U.S. 118, 134 (2022).

Iversen exposed himself and masturbated while sitting behind a young woman on a light rail train in Washington County, Oregon. He was arrested and pleaded guilty to public indecency. At his plea hearing, he acknowledged five prior convictions for public indecency, one prior conviction for rape in the third degree of a 15-year-old female, and one prior conviction for sodomy in the first degree of a 12-year-old female. He further admitted three sentencing enhancement factors applied to him: (1) "this crime involved persistent involvement in similar offenses unrelated to this current offense"; (2) "prior justice system sanctions have not deterred [him] from reoffending"; and (3) he was "on supervision for another offense at the time."

The Probation Officer prepared a presentence report which was considered by the sentencing judge. It noted that in addition to his prior convictions for public indecency, rape, and sodomy, Iversen also had prior convictions for multiple assaults, attempted burglary, and methamphetamine possession. He observed Iversen was diagnosed with "Exhibitionism . . . Paraphilia . . . Hypersexuality of Sexual Impulse Control Disorder . . . Antisocial Personality Disorder." He reported that a sex

offender treatment practitioner "did not believe that Iversen got much benefit from treatment."

At the sentencing hearing, the State outlined Iversen's criminal history, providing testimony and evidence— including several presentence investigation reports and officer testimony—as to the circumstances of his prior convictions and other uncharged or dismissed misconduct. It also presented evidence that Iversen had shown little progress during his rehabilitation.

Because of Iversen's criminal history, two recidivism statutes applied. First, his prior convictions for public indecency converted his instant offense—normally a Class A misdemeanor—into a Class C felony. Or. Rev. Stat. § 163.465(2)(b). Second, his instant and prior felony convictions for public indecency, together with his prior felony convictions for rape and sodomy, triggered a presumptive LWOP sentence pursuant to the Oregon sex offender recidivism statute. Or. Rev. Stat. § 137.719(1). Nevertheless, his counsel argued that a LWOP sentence for public indecency was both cruel and unusual—in violation of Iversen's rights under the Eighth Amendment.

The trial court judge rejected Iversen's arguments. He found Iversen's criminal history "absolutely horrendous." He described Iversen as "very dangerous" based on his previous convictions. He noted Iversen had "been given many, many opportunities . . . to reform," but had not taken advantage of them. He observed that "all we can do is incarcerate you because that's the only thing that works from preventing you to offend again." He explained "I don't find any mitigation whatsoever in this case that would warrant . . . a departure." He concluded Iversen had earned a life without parole sentence. He opined that the Supreme

Court's Eighth Amendment cases did "not declare that a sentence for this type of offense, a life sentence is unconstitutional." He clearly said, "I do not find that it is a[n] unconstitutional sentence." He noted, "[y]es this is a misdemeanor act, but it's the history, the prior convictions, the failures that you have." He then sentenced Iversen to life without parole pursuant to the Oregon sex offender recidivism statute. Or. Rev. Stat. § 137.719(1).

On direct review, the Oregon Court of Appeals affirmed the LWOP sentence with no reasoning other than a citation to *State v. Althouse*, 375 P.3d 475 (Or. 2016).[1] *State v. Iversen*, 435 P. 3d 837 (Or. App. 2019). The Oregon Supreme Court denied further review. *State v. Iversen*, 451 P.3d 984 (Or. 2019).

Iversen did not pursue post-conviction review in the state courts. Iverson's only claim is that the LWOP sentence for

---

[1] In *Althouse*, the Oregon Supreme Court explained "the Eighth Amendment does not require strict proportionality between crime and sentence[,] but forbids only extreme sentences that are grossly disproportionate to the crime." 375 P.3d at 489 (quotation marks omitted) (quoting *Ewing v. California*, 538 U.S. 11, 23 (2003) (O'Connor, J., plurality opinion)) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). "[T]he inquiry starts 'by comparing the gravity of the offense and the severity of the sentence.'" *Id*. (quoting *Graham v. Florida*, 560 U.S. 48, 60 (2010)). "[D]etermining the 'gravity' of a given offense in the context of a sentence imposed under a recidivist statute includes consideration of the defendant's criminal history." *Id*. (citing *Ewing*, 538 U.S. at 29) ("In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism. Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions.").

public indecency violated the Eighth Amendment's prohibition against cruel and unusual punishment.

The district court—relying on cases involving recidivist sentences—concluded Iversen could not "demonstrate that the trial court's determination that his sentence [did] not violate the Eighth Amendment was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." It accordingly denied Iversen habeas relief.

## II

The Eighth Amendment, made applicable to the States by the Fourteenth Amendment, forbids cruel and unusual punishment. The Supreme Court has held that it prohibits a sentence to a state prison that is disproportionate to the offense. *Weems v. United States*, 217 U.S. 349, 368 (1910) (quoting *McDonald v. Commonwealth*, 53 N.E. 874, 875 (Mass. 1899)). While the Court addressed the proportionality principle in a series of subsequent cases, it has not established "a clear or consistent path for courts to follow" in determining when a particular sentence for a term of years violates the Eighth Amendment. *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).

In *Rummel v. Estelle*, the Court upheld a life sentence with the possibility of parole under Texas' recidivist sentencing statute where the defendant was charged with the felony of obtaining $120 by false pretenses. 445 U.S. 263, 276, 285 (1980). The defendant's previous convictions included fraudulently using a credit card to obtain $80 worth of goods and passing a forged check in the amount of $28.36. *Id*. at 265. It noted that "successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id*. at 272. It added that "the length of the

sentence actually imposed is purely a matter of legislative prerogative" for crimes classified as felonies. *Id*. at 274.

In *Solem v. Helm*, the Court concluded a LWOP sentence under a South Dakota recidivist sentencing statute applied to a conviction for uttering a "no account" check for $100 was "significantly disproportionate" to the crime and violated the Eighth Amendment. 463 U.S. 277, 281, 303 (1983). The defendant's offense "was 'one of the most passive felonies a person could commit,'" *id*. at 296 (quoting *State v. Helm*, 287 N.W. 2d 497, 501 (S.D. 1980) (Henderson J., dissenting)), and his six prior nonviolent felonies "were all relatively minor," *id*. at 296–97. The Court suggested that "a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id*. at 292.

In *Harmelin v. Michigan*, the Court affirmed a mandatory LWOP sentence for possessing more than 650 grams of cocaine without any consideration of "mitigating factors such as, in [defendant's] case, the fact that he had no prior felony convictions." 501 U.S. 957, 994 (1991). The Court suggested that there is "no comparable requirement" for an individualized determination that the punishment is grossly disproportionate "outside the capital context, because of the qualitative difference between death and all other penalties." *Id*. at 995 (Scalia, J.). Justice Scalia, joined by Chief Justice Rehnquist—in a non-plurality opinion, declared that "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." *Id*. at 965. Justice Kennedy, joined by Justices O'Connor and

Souter—the plurality opinion, concurring in part and concurring in the judgment, adopted a "narrow proportionality principle," rather than rejecting any proportionality guarantee under the Eighth Amendment outright. *Id*. at 997 (Kennedy, J.). Though Justice Kennedy acknowledged the three factors set forth in *Solem v. Helm*, he thought the case "did not announce a rigid three-part test." *Id*. at 1004. Rather, he believed the Court should initially examine the "crime committed and the sentence imposed" and only proceed with intra and inter-jurisdictional analyses "in the rare case" where the initial examination "leads to an inference of gross disproportionality." *Id*. at 1005.

In *Ewing v. California*, the Court upheld a California three strikes sentence of 25 years to life for the felony grand theft of three golf clubs together worth $1,200. 538 U.S. 11, 28, 30–31 (2003). Justice O'Connor, joined by Chief Justice Rehnquist and Justice Kennedy, explained "[i]n weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism." *Id*. at 29 (plurality opinion). The plurality noted "the legislature . . . has primary responsibility for making the difficult policy choices that underlie any criminal sentencing scheme." *Id*. at 28. It further observed "the State's public-safety interest in incapacitating and deterring recidivist felons" is a "legitimate penological goal." *Id*. at 29.

In *Lockyer v. Andrade*, the Court concluded it was not a clear violation of the federal prohibition on cruel and unusual punishment to impose two consecutive terms of 25 years to life under California's three strikes statutes for defendant's two petty theft crimes, where the defendant also had prior convictions for misdemeanor theft, residential burglary, and transporting marijuana. 538 U.S. at 66–67, 77.

Finally, in *Graham v. Florida*, the Court held the Eighth Amendment prohibited LWOP sentences for juveniles who committed nonhomicide offenses because such sentences are grossly disproportionate to the offenses. 560 U.S. 48, 82 (2010).

We glean several broad principles from these Supreme Court cases. First, the length of a particular sentence is a matter of legislative prerogative. *Rummel*, 445 at 274. The State's public-safety interest in incapacitating and deterring a recidivist felon is a legitimate penological goal. *Ewing*, 538 U.S. at 29. Finally, a defendant's history of recidivism is relevant in weighing both the gravity of his offense and the proportionality of his sentence. *Id*.

These principles are demonstrated in *Gonzalez v. Duncan* where we ultimately reversed and remanded a denial of habeas relief. 551 F.3d 875, 891 (9th Cir. 2008). Gonzalez, a convicted sex offender, was charged with failing to register a change of address pursuant to California's sex offender registration statute. *Id*. at 877. He was convicted, which resulted in him receiving a sentence of 28 years to life under California's Three Strikes law. *Id*. at 878–79. We recognized the State of California's interest in deterring recidivist felons. *Id*. at 886. We reviewed Gonzalez's extensive criminal history and we determined *Gonzalez* was the type of "exceedingly rare" case that demonstrated gross disproportionality. *Id*. at 882, 886–87.

We did not reach that conclusion lightly. In finding an inference of gross disproportionality, we noted that Gonzalez's failure to register was "an entirely passive, harmless, and technical violation of the registration law." *Id*. at 885 (quoting *People v. Carmony*, 26 Cal. Rptr. 3d 365, 372 (2005)). Further still, while Gonzalez's criminal history

"include[ed] convictions for possession of a controlled substance and auto theft in 1988, attempted forcible rape and lewd conduct with a child in . . . 1989, robbery in 1992, and spousal abuse in 1999," *id*. at 886; we discerned no "rational relationship between Gonzalez's failure to update his sex offender registration . . . and the probability he will recidivate as a violent criminal or sex offender," *id*. at 887. Thus, given the passivity of merely failing to register, and the lack of connection between his criminal history and potential recidivism as a sex offender, we concluded the sentence was grossly disproportionate.

## III

Turning to Iversen's case, we cannot conclude that his sentence raises an inference of gross disproportionality. Unlike *Gonzalez*, Iversen was not convicted of a harmless regulatory offense. Instead, he was convicted of public indecency for the sixth time. This is in addition to his extensive history of sex offenses. The statute in question in *Gonzalez* was centered on "the need for police to be able to keep track of offenders." 551 F.3d at 889. Here, Oregon's statute is aimed at punishing recidivist felony sex offenders. Oregon has a public safety interest in incapacitating and deterring recidivist felons like this. *Ewing*, 538 U.S. at 29. Iversen's criminal history is directly related to the triggering offense, and he has a clear pattern of recidivism which was considered by the state court.

While some fair-minded jurists may disagree on the correctness of Iversen's LWOP sentence, the Oregon state court's decision concerning his sentence is not contrary to the Supreme Court's Eighth Amendment jurisprudence. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Under the "AEDPA standard we must apply here, 'the only relevant

clearly established law amenable to the "contrary to" or "unreasonable application of" framework is the gross disproportionality principle, the precise contours of which are unclear.'" *Gonzalez*, 551 F.3d at 882–83 (citing *Andrade*, 538 U.S. at 73). This sentence is not constitutionally infirm in light of the gravity of Iversen's offense and criminal history. *Norris v. Morgan*, 662 F.3d 1276, 1296 (9th Cir. 2010).

The state courts (1) considered Iversen's history of adult felony recidivism; (2) acknowledged Iversen's mental health record, reviewed his failed opportunities to reform, and concluded he remained very dangerous to others; (3) determined a LWOP sentence was neither extreme nor disproportionate to Iversen's instant offense after considering his past criminal conduct; (4) observed Oregon's public-safety interest in incapacitating and deterring recidivist felons—like Iversen—is a legitimate penological goal; and (5) sentenced Iversen to LWOP pursuant to Oregon's legislatively-mandated sex offender recidivism statute.

The district court correctly determined the Oregon state court's LWOP sentence for Iversen was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Accordingly, the district court did not err when it denied Iversen's habeas petition.

The judgment of the district court is **AFFIRMED**.