**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CECILIO GONZALEZ,
      *Petitioner-Appellant,*

v.

W. A. DUNCAN,
      *Respondent-Appellee.*

No. 06-56523

D.C. No.
CV-04-09786-DOC

OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
April 9, 2008—Pasadena, California

Filed December 30, 2008

Before: William C. Canby, Jr., Andrew J. Kleinfeld, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

16829

## COUNSEL

Sean K. Kennedy, Federal Public Defender, Gia Kim (argued), Deputy Federal Public Defender, Los Angeles, California, for the petitioner-appellant.

Edmund G. Brown, Jr., Attorney General of the State of California, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, Carl N. Henry (argued), Deputy Attorney General, Los Angeles, California, for the respondent-appellee.

## OPINION

BYBEE, Circuit Judge:

Cecilio Gonzalez was convicted by a jury of failing to update his annual sex offender registration within five working days of his birthday, in violation of California Penal Code § 290(a)(1)(D).[1] Because of his prior criminal convictions, he received a sentence of 28 years to life imprisonment under California's "Three Strikes" law. On habeas review, we must decide whether his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment and, if so, whether the contrary conclusion of the California Court of Appeal constituted an unreasonable application of clearly established federal law.

The California courts have characterized the state's registration requirement as a regulatory offense, a "most technical violation" that "by itself, pose[s] no danger to society." *People v. Cluff*, 105 Cal. Rptr. 2d 80, 81, 86 (Cal. Ct. App. 2001). In a case materially indistinguishable from this one, the California Court of Appeal concluded that a Three Strikes sentence of 25 years to life imprisonment for violating the registration requirement was "grossly disproportionate to the offense" and violated the Eighth Amendment. *People v. Carmony*, 26 Cal. Rptr. 3d 365, 368-69 (Cal. Ct. App. 2005). Although our standard of review is more deferential, we too conclude that Gonzalez's sentence is grossly disproportionate to his offense. We further conclude that the California Court of Appeal's decision affirming Gonzalez's sentence constitutes an unreasonable application of clearly established fed-

---

[1] The provisions of California Penal Code § 290 have since been recodified to California Penal Code § 290.012. In this opinion, we use the section numbers and statutory language corresponding to the charged crimes when Gonzalez was sentenced.

eral law under 28 U.S.C. § 2254(d)(1). We therefore reverse the district court's denial of Gonzalez's petition and remand with instructions to grant the petition for a writ of habeas corpus.

I

On August 10, 2001, Petitioner Cecilio Gonzalez, a convicted sex offender, was charged by information in Los Angeles County Superior Court with two felony violations of California's sex offender registration statute, California Penal Code § 290(a)(1)(A), for allegedly failing to register a change of address on and between May 16, 2000 and May 31, 2001. The information further alleged that Gonzalez had been convicted of three serious or violent felonies that constituted "strikes" under California's Three Strikes law.

Gonzalez pled not guilty. Prior to trial, he moved to proceed in propria persona. At a pretrial hearing on September 7, 2001, the superior court expressed concern about the possibility that Gonzalez would receive a life sentence even though the facts indicated that Gonzalez had attempted to comply with the registration requirements. The court thus encouraged Gonzales to accept a plea agreement in exchange for a midterm sentence of two years. Gonzalez maintained his innocence and refused to accept a plea. The court granted Gonzalez's motion to proceed pro per.

On September 10, 2001, the prosecution amended the information. Count 1 of the amended information alleged that Gonzalez failed to register a change of address on and between May 16, 2000, and May 31, 2001, in violation of California Penal Code § 290(a)(1)(A), and Count 2 alleged that he failed to update his registration within five working days of his February 24, 2001, birthday in violation of California Penal Code § 290(a)(1)(D). The amended information retained the allegation of three prior serious or violent felony convictions under California's Three Strikes law.

Trial began on January 16, 2002. When the superior court asked if the parties were ready to begin, Gonzalez expressed his willingness to accept a plea agreement in exchange for a one year sentence. The court offered a four year sentence, which Gonzalez declined. Gonzalez moved for a *Romero*[2] hearing to permit the court to strike one or more of his prior felony convictions for Three Strikes sentencing purposes in the interest of justice. After a brief hearing, the superior court declined to strike any of the prior convictions.

The case proceeded to a jury trial, during which Gonzalez cross-examined prosecution witnesses and presented a defense. The government's theory on Count 1 was that Gonzalez had moved twice without updating his sex offender registration: first, from his grandmother's house in Lake View Terrace to his wife's house in Chatsworth; and second, from the house in Chatsworth to an apartment he allegedly shared with his wife in North Hills.

The government's basis for Count 2 was that Gonzalez had failed to update his registration within five working days of his February 24, 2001, birthday. Testimony established that the California Department of Corrections notified Gonzalez of his duty to register annually within five working days of his birthday on May 2, 2000. Gonzalez registered his Lake View Terrace address on May 23, 2000, nine months before his February 24, 2001, birthday. On the registration form, Gonzalez initialed the statement: "I must *annually*, within *5 working days* of my birthday, go to the law enforcement agency having jurisdiction over my location or place of residence and update my registration information." Gonzalez, however, did not update his registration until May 21, 2001, within one year of being advised of his duty to report annually, but three months after his birthday.

---

[2] *See People v. Superior Court (Romero)*, 917 P.2d 628 (Cal. 1996).

On January 23, 2002, the jury acquitted Gonzales of failing to register a change of address but convicted him of failing to update his registration annually within five working days of his birthday. At a bench trial to determine the validity of Gonzalez's prior convictions, the prosecutor introduced abstracts of judgment for a 1988 conviction for cocaine possession, a 1989 conviction for committing a lewd act with a child under 14 years of age, a 1989 conviction for attempted rape by force,[3] and a 1992 conviction for second-degree robbery. The superior court found three prior serious or violent felony convictions under California's Three Strikes law[4] and three prior prison terms, which each triggered additional one-year sentence enhancements under California law.[5] Gonzalez renewed his *Romero* motion to strike his prior convictions, which the superior court denied. The superior court sentenced Gonzalez to an indeterminate period of 28 years to life imprisonment. The California Court of Appeal affirmed the sentence in an eight page unpublished opinion, and the California Supreme Court declined to hear the case on direct appeal.

Gonzalez filed state habeas petitions in the California Court of Appeal and the California Supreme Court, which were both summarily denied. Gonzalez then filed this 28 U.S.C. § 2254 petition for a writ of habeas corpus in the United States Dis-

---

[3]The 1989 lewd act and attempted rape convictions arose from a single incident.

[4]Under the Three Strikes law, a defendant with a current felony conviction and no fewer than two prior serious or violent felony convictions must be sentenced to an indeterminate period of life imprisonment, with the minimum term calculated as the greater of three times the punishment for each current felony conviction, or 25 years. Cal. Penal Code §§ 667(e)(2)(A) & 1170.12(c)(2)(A).

[5]Under California Penal Code § 667.5(b), a defendant convicted of a felony receives a one-year enhancement for each prior separate prison term served for any felony, "provided that no additional term shall be imposed . . . for any prison term served prior to a period of five years in which the defendant remained free of both prison custody and the commission of an offense which results in a felony conviction."

trict Court for the Central District of California. A magistrate judge recommended denying Gonzalez habeas relief, and the district court adopted the recommendation and entered judgment dismissing the petition. Gonzalez timely filed a notice of appeal and applied for a certificate of appealability. We certified one issue: "whether appellant's sentence of 28 years-to-life under California's Three Strikes law violates the Eighth Amendment."[6]

## II

We review the district court's denial of a 28 U.S.C. § 2254 petition for a writ of habeas corpus *de novo*. *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002). Applying the deferential standard of review of the Antiterrorism and Effective Death Penalty Act (AEDPA), we will not disturb the decisions of the California state courts with respect to Gonzalez's Eighth Amendment claim unless the state court's resolution of that claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Ramirez v. Castro*, 365 F.3d 755, 762 (9th Cir. 2004). Furthermore, we presume that factual findings made by a state court are correct unless the petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III

**[1]** The Eighth Amendment mandates that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "The final clause prohib-

---

[6]Gonzalez raises two uncertified issues in his opening brief, which we construe as a motion to expand the Certificate of Appealability. *See* 9th Cir. R. 22-1(e). Because Gonzalez failed to make "a substantial showing of the denial of a constitutional right" with respect to those issues, we deny that motion. *See* 28 U.S.C. § 2253(c)(2).

its not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284 (1983). Reviewing its Eighth Amendment jurisprudence, the Court has stated that "one governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). The " 'precise contours' of [the gross disproportionality principle] 'are unclear,' " and "applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 72-73 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 998, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)). Five Supreme Court decisions supply guidance on how gross disproportionality review operates in practice.

First, in *Rummel v. Estelle*, the Court considered the imposition of a life sentence with the possibility of parole within 12 years under a Texas recidivist sentencing statute. 445 U.S. 263, 265-66, 268 (1980). Rummel was convicted of a felony for obtaining $120.75 by false pretenses; he had prior felony convictions for fraudulently using a credit card to obtain $80 worth of goods or services and for passing a forged check in the amount of $28.36. *Id.* at 265-66. The Court upheld the sentence but cautioned that its decision did not mean "that a proportionality principle would not come into play in the extreme example [of] a legislature [making] overtime parking a felony punishable by life imprisonment." *Id.* at 274 n.11.

By contrast, in *Solem v. Helm*, the Court held that imposition of a life sentence *without the possibility of parole* under South Dakota's recidivist sentencing statute was grossly disproportionate to the triggering offense of uttering a "no account" check for $100. 463 U.S. 277, 281-82, 284 (1983). Ordinarily, the maximum punishment for this offense would have been five years imprisonment and a $5,000 fine; however, Helm had three prior third degree burglary convictions, as well as single convictions for obtaining money under false pretenses, grand larceny, and third-offense driving while

intoxicated. *Id*. at 279-81. All of Helm's crimes were "nonviolent, none was a crime against a person, and alcohol was a contributing factor in each case." *Id*. at 280.

**[2]** The Court announced three objective factors to guide review of a sentence for a term of years under the Eighth Amendment. First, a reviewing court must look to the gravity of the offense and the harshness of the penalty. *Id.* at 290-91. The Court noted that "Helm's crime was one of the most passive felonies a person could commit," involving neither violence nor threat of violence to any person, and the Court further reasoned that Helm's prior felonies were all relatively minor. *Id*. at 296-97 (internal quotation marks omitted). Second, the Court stated that "it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction." *Id.* at 291. Applying this factor, the Court found that Helm's offense was much less severe than the other crimes punishable by life imprisonment without possibility of parole in South Dakota, which included murder, treason, first-degree manslaughter, first-degree arson and kidnaping. *Id*. at 298. Finally, the majority explained that reviewing "courts may find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 291. On this point, the Court found that Helm's sentence was more severe than that authorized for the same crime in all but one other state. *Id*. at 299. The Court concluded that Helm's sentence violated the Eighth Amendment. *Id.* at 303.

In a third case, *Harmelin v. Michigan*, the Court upheld a life sentence without the possibility of parole for possession of more than 650 grams of cocaine. 501 U.S. 957, 961, 996 (1991). With respect to the general principles of gross disproportionality review, no opinion commanded a majority of the Court. Seven members of the Court agreed, however, that the Eighth Amendment contains a gross disproportionality principle, although they disagreed as to the factors that comprise it. *Id.* at 996-97 (Kennedy, J., concurring in part and concurring

in the judgment); *id.* at 1009 (White, J., dissenting); *id.* at 1027 (Marshall, J., dissenting).

Justice Kennedy's opinion, joined by Justices O'Connor and Souter, represented the narrowest view of a majority of the Court on the question of gross disproportionality review. *See Marks v. United States*, 430 U.S. 188, 193 (1977). Under Justice Kennedy's view, the Eighth Amendment "does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in the judgment) (quoting *Helm*, 463 U.S. at 288, 303). Though he acknowledged the three factors set forth in *Helm*, Justice Kennedy thought that the case "did not announce a rigid three-part test." *Id.* at 1004. Rather, he thought the Court should initially examine the "crime committed and the sentence imposed" and only proceed with intrajurisdictional and interjurisdictional analyses "in the rare case[s]" where the initial examination "leads to an inference of gross disproportionality." *Id.* at 1005-06.

Applying this methodology, Justice Kennedy concluded that Harmelin's sentence, when compared with his crime, did not give rise to an inference of gross disproportionality, and thus that no further inquiry was required. *Id.* at 1008-09. Contrasting Harmelin's offense with the crime considered by the Court in *Helm*, he observed that, while utterance of a no account check was "one of the most passive felonies a person could commit," possession of a large quantity of cocaine "threatened to cause grave harm to society" because of the association between drugs and violent crime. *Id.* at 1002 (internal quotation marks omitted); *accord Taylor v. Lewis*, 460 F.3d 1093, 1099 (9th Cir. 2006) (upholding, on habeas review, a sentence of 25 years to life imprisonment under California's Three Strikes law for possession of 0.036 grams of cocaine).

In a fourth case, *Ewing v. California*, the Court upheld a Three Strikes sentence of 25 years to life imprisonment for felony grand theft of personal property in excess of $400. 538 U.S. 11, 30-31 (2003). The defendant's prior convictions included three counts theft, one count grand theft auto, one count battery, four counts burglary, one count possession of drug paraphernalia, one count unlawful possession of a firearm, at least one count trespassing, and one count robbery. *Id.* at 18-19. There was no majority opinion but Justice O'Connor's opinion, joined by Chief Justice Rehnquist and Justice Kennedy, represents the narrowest basis for the Court's decision.[7] Justice O'Connor weighed the gravity of the triggering offense against the harshness of the penalty, factoring in Ewing's "long history of felony recidivism" in its calculation. *Id.* at 29 (opinion of O'Connor, J.). The plurality first rejected the defendant's attempt to downplay the seriousness of his offense, and offered the following analysis:

> Even standing alone, Ewing's theft should not be taken lightly. His crime was certainly not "one of the most passive felonies a person could commit." To the contrary, the Supreme Court of California has noted the "seriousness" of grand theft in the context of proportionality review.

*Id.* at 28 (internal citation omitted). The plurality then concluded that Ewing's sentence of 25 years to life imprisonment "reflect[ed] a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated." *Id.* at 30.

---

[7]Justices Scalia and Thomas, concurring only in the judgment, concluded that the Eighth Amendment contains no proportionality principle at all. *Id.* at 31-32 (Scalia, J., concurring in the judgment); *id.* (Thomas, J., concurring in the judgment). This view, however, was clearly rejected by the plurality and by the four dissenters. *Id.* at 23-24 (opinion of O'Connor, J.); *id.* at 32-33 (Stevens, J., dissenting).

Finally, in *Lockyer v. Andrade,* the Court upheld on federal habeas review a Three Strikes sentence of 25 years to life imprisonment for two petty theft convictions arising from the theft of $153.54 worth of videotapes. 538 U.S. 63, 77 (2003). The defendant's prior convictions included two counts of misdemeanor theft, at least three counts of residential burglary, and two counts of transportation of marijuana. *Id.* at 66-67. Applying AEDPA's deferential standard of review, the Court declared that "[t]he facts here fall in between the facts in *Rummel* and the facts in *Solem*[,] . . . [a]nd while this case resembles to some degree both *Rummel* and *Solem*, it is not materially indistinguishable from either." *Id.* at 74. The Court thus held that the California court decision was not contrary to clearly established Supreme Court precedent. *Id.* Applying the "unreasonable application" clause, the Court first noted the substantial uncertainty among its membership "regarding the application of the proportionality principle to the California three strikes law." *Id.* at 76. The majority then reiterated that a sentence for a term of years violated the Eighth Amendment only in an extraordinary case. *Id.* at 77. The Court held that Andrade's sentence did not constitute such an extraordinary case and thus that the California Court of Appeal's affirmance of his sentence did not constitute an unreasonable application of clearly established law. *Id.*

The Supreme Court's Eighth Amendment jurisprudence establishes that "no penalty is *per se* constitutional," and that "*successful* challenges to the proportionality of particular sentences [are] exceedingly rare," *Helm*, 463 U.S. at 289-90 (quotation marks omitted), and "reserve[d] . . . for only the extraordinary case." *Andrade*, 538 U.S. at 77. Nevertheless, the Court has stated, as plainly as can be expressed in words, that "one governing principle emerges as 'clearly established' under § 2254(d)(1): A gross proportionality principle is applicable to sentences for terms of years." *Andrade*, 538 U.S. at 72.

Although the principle may be "clearly established," the details are not. In *Andrade*, the Court decried its own "lack of

clarity regarding what factors may indicate gross proportionality," *id.*, but declined to clarify the "gross disproportionality" standard, leaving us with a principle, but no explanation. As the Court itself framed the AEDPA standard we must apply here, "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear." *Id.* at 73. Although the *Andrade* Court noted that it had in the past largely failed to supply specific content to the gross disproportionality principle, the Court nonetheless did not hesitate to apply it. *Id.* at 76-77; *see also Ewing v. California*, 538 U.S. 11, 28-31 (2003) (plurality opinion) (applying the gross disproportionality principle).

Following *Andrade*, we have applied the gross disproportionality principle in a number of cases. In *Ramirez v. Castro*, for example, Ramirez shoplifted a $199 VCR and was convicted of one count of petty theft with a prior theft-related conviction, an offense punishable as a felony under California law. 365 F.3d 755, 756 (9th Cir. 2004). Having been previously convicted of two nonviolent shoplifting offenses, Ramirez was sentenced to 25 years to life imprisonment under California's Three Strikes law. We first found that Ramirez's sentence was "harsh . . . beyond any dispute" and not "justified by the gravity of his most recent offense and criminal history." *Id*. at 767-68. Finding that "this is the extremely rare case that gives rise to an inference of gross disproportionality," we then conducted an intrajurisdictional and interjurisdictional "comparative analysis" of Ramirez's sentence. *Id.* at 770-73. We concluded that the state court had correctly identified the gross disproportionality principle and that the court's decision was thus not "contrary to" Supreme Court precedent. *Id.* at 774. However, we held that Ramirez was entitled to habeas relief because the state court had unreasonably applied the gross disproportionality principle to the facts in Ramirez's case. *Id.* at 774-75.

As *Nunes v. Ramirez-Palmer,* 485 F.3d 432 (9th Cir. 2007), illustrates, however, we have followed the Supreme Court's admonition that successful disproportionality challenges should be rare. In *Nunes*, the petitioner was sentenced to 25 years to life imprisonment after being convicted of shoplifting $114.40 worth of tools. *Id.* at 435. Unlike the petitioner in *Ramirez*, however, Nunes had an "extensive felony record" dating back almost sixty years. *Id.* at 440. We had little difficulty concluding that Nunes was not entitled to habeas relief. *Id.* at 443. In other cases, we have similarly denied habeas relief to petitioners where the triggering offense involved a serious crime against life or property and followed a long criminal history. *See, e.g.*, *Taylor v. Lewis*, 460 F.3d 1093, 1101 (9th Cir. 2006) (denying habeas relief to petitioner who received 25 years to life imprisonment for possessing 0.036 grams of cocaine following a "history of recidivism, marked by violence and the intentional taking of human life and spanning some 30 years"); *Rios v. Garcia*, 390 F.3d 1082, 1083 (9th Cir. 2004) (denying habeas relief to petitioner who received sentence of 25 years to life imprisonment for stealing $80 worth of watches from a department store following prior robbery convictions).

## IV

Having set forth this background, we now turn to whether "a threshold comparison of the crime committed and the sentence imposed" in this case "leads to an inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring in part and concurring in the judgment).

### A. *Inference of Gross Disproportionality*

#### 1. Gravity of the Offense

[3] We weigh the criminal offense and the resulting penalty "in light of the harm caused or threatened to the victim or to society, and the culpability of the offender." *Helm*, 463 U.S.

at 292. The statute of conviction, California Penal Code § 290(a)(1)(D), requires a registered sex offender to update his registration annually within five working days of his birthday. Violation of that subsection "involve[s] neither violence nor threat of violence to any person," *Helm*, 463 U.S. at 296; it is purely a regulatory offense. *See People v. Barker*, 34 Cal. 4th 345, 354 (2004). "[A] violation of section 290 requires actual knowledge of the duty to register," *id.* at 351, but one may violate the statute simply by forgetting to register after having been advised of the duty to do so. *Id.* at 354.

The purpose of California's registration law is to prevent "recidivism in sex offenders" by assuring they are "available for police surveillance." *Wright v. Superior Court*, 936 P.2d 101, 104 (Cal. 1997) (internal quotation marks and citations omitted). Section 290(a)(1)(A)'s mandate that sex offenders register any change of address relates directly to the state's interest in ensuring that it knows the whereabouts of its sex offenders. As noted by the California Supreme Court, "[e]nsuring offenders are readily available for police surveillance depends on timely change-of-address notification." *Id.* at 105 (internal quotation marks and citation omitted). A jury, however, acquitted Gonzalez of the charge that he violated this requirement. Accordingly, we adopt the jury's implicit determination that Gonzalez was living at his registered address throughout the relevant time period in this case.

**[4]** By contrast, § 290(a)(1)(D)'s annual registration requirement, which Gonzalez was convicted of violating, is only tangentially related to the state's interest in ensuring that sex offenders are available for police surveillance. Annual registration is merely a "backup measure to ensure that authorities have current accurate information." *People v. Carmony*, 26 Cal. Rptr. 3d 365, 374 (Cal. Ct. App. 2005). Failure to comply with the annual registration requirement is "the most technical violation of the section 290 registration requirement," and "by itself, pose[s] no danger to society."

*People v. Cluff*, 105 Cal. Rptr. 2d 80, 81, 86 (Cal. Ct. App. 2001).

Indeed, we are unable to discern any actual harm resulting from Gonzalez's failure to comply with the annual registration requirement. Gonzalez updated his sex offender registration nine months before and three months after his February 24, 2001, birthday, and he remained at his last registered address throughout that time period. There is nothing in the record remotely indicating that Gonzalez's failure to reregister the same address a third time in the same twelve month period could have interfered with the ability of police to monitor his activities.[8] The record confirms that Gonzalez was in fact "readily available for police surveillance": Gonzalez was arrested "fairly close" to his registered address, and the arresting officers were familiar with Gonzalez and had spoken to him previously at that location. *Id.* at 86 ("Cluff was exactly where he said he would be when he registered in 1995, and the police were able to quickly find him."). We conclude that "[t]he purpose of the registration statute was not undermined by [Gonzalez's] failure to annually update his registration." *Id.*

In reviewing Three Strikes sentences triggered by violations of the sex offender registration law, California courts have recognized that the distinction between a conviction for failure to register after a change of address as required by § 290(a)(1)(A), and a conviction for failure to update registration annually as required by § 290(a)(1)(D), is critical. In *Peo-*

---

[8]We recognize that administrative efficiency requires California to designate some benchmark, such as the registrant's birthday, for the annual registration requirement and that California has a legitimate interest in criminalizing failure to comply with that regulatory requirement. Our analysis in no way calls into question the constitutional validity of § 290(a)(1)(D) or California's ability to criminalize its violation. We evaluate the social justification for the requirement only to determine whether the Three Strikes sentence imposed in Gonzalez's case exceeds constitutional limits.

*ple v. Meeks*, the Court of Appeal held that imposition of a 25 years to life sentence for failure to register a change of address and a consecutive sentence of two years imprisonment for failure to update registration annually did not violate the Eighth Amendment.[9] 20 Cal. Rptr. 3d 445 (Cal. Ct. App. 2004). By contrast, in *Carmony*, the Court of Appeal held that a sentence of 25 years to life imprisonment merely for failure to update registration annually did violate the Eighth Amendment. 26 Cal. Rptr. 3d at 365. The court analyzed the sentence as follows:

> The purpose of the sex offender registration law is to require that the offender identify his present address to law enforcement authorities so that he or she is readily available for police surveillance. In this case the defendant did so one month prior to his birthday and was in fact present at his registered address when the arrest for the present violation was made. The stated purpose of the birthday registration requirement was (and still is) to "update" the existing registration information.
>
> Here, there was no new information to update and the state was aware of that fact. Accordingly, the requirement that defendant re-register within five days of his birthday served no stated or rational purpose of the registration law and posed no danger or harm to anyone.

---

[9]We note that for purposes of sentencing, the trial court in *Meeks* struck the defendant's prior convictions with respect to his conviction for his failure to register annually within five days of his birthday. *See* 20 Cal. Rptr. 3d at 448. *Meeks* is consistent with *Cluff*, which held that the trial court abused its discretion by denying a *Romero* motion to strike one or more priors in the interest of justice when sentencing the defendant for failure to register annually within five days of his birthday. *See Cluff*, 105 Cal. Rptr. 2d at 87-88.

Because a 25-year recidivist sentence imposed solely for failure to provide duplicate registration information is grossly disproportionate to the offense, shocks the conscience of the court and offends notions of human dignity, it constitutes cruel and unusual punishment under both the state and federal Constitutions.

*Carmony*, 26 Cal. Rptr. 3d at 368-69 (internal citation omitted). This case is not materially distinguishable from *Carmony*. Gonzalez registered nine months before and three months after his February 24, 2001, birthday. The jury found that he did not change addresses during that time period. The police were well aware of Gonzalez's location at all times and indeed arrested him near his registered address.

[5] Although we independently evaluate federal constitutional claims, in doing so we are bound by the California courts' interpretations of California law. *See Powell v. Lambert*, 357 F.3d 871, 874 (9th Cir. 2004). Accordingly, we follow the Court of Appeal in finding that violation of the annual registration requirement of § 290(a)(1)(D) alone is "an entirely passive, harmless, and technical violation of the registration law." *Carmony*, 26 Cal. Rptr. 3d at 372.[10]

---

[10]We note that the *Carmony* court's analysis of that provision comports with common sense, particularly as applied to the circumstances of this case. To convict Gonzalez of violating § 290(a)(1)(D), the jury found "beyond a reasonable doubt that the defendant had actual knowledge of his duty to register annually within five working days of his birthday and that he knew what act was required to be performed." *See People v. Garcia*, 25 Cal. 4th 744, 752 (2001) ("In a case like this, involving a *failure* to act, we believe section 290 requires the defendant to actually know of the duty to act."). While violation of § 290(a)(1)(D) requires "willfulness," or "actual knowledge of the duty to register," *id.*, forgetting to update the registration during the prescribed five working days after the registrant's birthday is not a defense. *Barker*, 34 Cal. 4th at 350 ("forgetting the mandatory registration requirement of section 290 is simply not a legitimate defense to the charge of willfully failing to register"). As a result, it is pos-

2.  Severity of the Penalty

**[6]** Gonzalez's sentence of 28 years to life is "harsh . . . beyond any dispute." *Ramirez*, 365 F.3d at 767. The indeterminate life sentence he received is the third most severe penalty available under California law, exceeded in severity only by death and life imprisonment without the possibility of parole. *See id.* Under the Three Strikes law, Gonzales must serve a minimum of 28 years before he is eligible for parole. *See Carmony*, 26 Cal. Rptr. 3d at 374. In contrast, a defendant who, *without prior strikes*, violates § 290(a)(1)(D) by failing to update his registration annually may only receive a prison term of between sixteen months and three years. Cal. Penal Code § 290(g)(2). Gonzalez's minimum sentence is therefore 21 times greater than the statutory minimum and more than nine times greater than the statutory maximum.[11]

**[7]** In comparison to the passive, harmless, and technical violation that triggered Gonzalez's sentence, "the severe penalty imposed on [Gonzalez] appears disproportionate by any measure." *Cluff*, 105 Cal. Rptr. 2d at 87. We recognize, however, that California has a valid "public-safety interest in incapacitating and deterring recidivist felons." *Ewing*, 538 U.S. at 29 (opinion of O'Connor, J.); *see also People v. Murphy*, 19 P.3d 1129, 1142 (Cal. 2001) (stating that the purpose of the Three Strikes law is "to punish recidivism"). Thus, we must consider the defendant's criminal history when weighing the

---

sible that Gonzalez violated § 290(a)(1)(D) through ordinary negligence by forgetting to register during the mandated five working day period. Because the record suggests that Gonzalez made a good faith effort to comply with the registration law, we find that little or no moral culpability attaches to his violation of § 290(a)(1)(D).

[11]Gonzalez's sentence is also a high multiple of the plea offers he received. *See Reyes v. Brown*, 399 F.3d 964, 969 n.9 (9th Cir. 2005) (holding that plea offers are relevant to determining whether a Three Strikes sentence is grossly disproportionate to the triggering offense).

severity of the penalty. *See Ewing*, 538 U.S. at 29 (opinion of O'Connor, J.).

Gonzalez's criminal history is extensive, including convictions for possession of a controlled substance and auto theft in 1988, attempted forcible rape and lewd conduct with a child under the age of fourteen in 1989, robbery in 1992, and spousal abuse in 1999. We recognize that Gonzalez's prior convictions, which include both crimes of violence and sexual predation, are very serious. We also acknowledge the state's interest in deterring recidivism. Incarceration for a minimum of 28 years would incapacitate Gonzalez and thus prevent him from committing additional felonies against the general population.

However, we are unable to discern any rational relationship between Gonzalez's failure to update his sex offender registration annually and the probability that he will recidivate as a violent criminal or sex offender. There is no evidence that, as of 2001, Gonzalez was a recidivist. We agree with the California Court of Appeal's conclusion in *Carmony* that a sentence of 25 years to life imprisonment does not "protect the public when the *current* offense bears little indication [that the defendant] has recidivist tendencies to commit offenses that pose a risk of harm." *Carmony*, 26 Cal. Rptr. 3d at 375 (emphasis added).

**[8]** Gonzalez's present offense does not reveal any propensity to recidivate. California certainly may be "justified in punishing a recidivist more severely than it punishes a first offender," *Helm*, 463 U.S. at 296, where " 'the latest crime . . . is considered to be an aggravated offense because [it is] a repetitive one,' " *Witte v. United States*, 515 U.S. 389, 400 (1995) (quoting *Gryger v. Burke*, 334 U.S. 728, 732 (1948)). However, what California has done here is fundamentally different. It has imposed an extraordinarily harsh sentence on Gonzalez based on a violation of a technical regulatory requirement that resulted in no social harm and to which little

or no moral culpability attaches. Absent some connection between Gonzalez's past violent and sexual offenses, his present regulatory violation, and his propensity to recidivate as a violent or sexual offender, we cannot conclude that California's interest in deterring and incapacitating recidivist offenders justifies the severity of the indeterminate life sentence imposed.

**[9]** In sum, we conclude that Gonzalez's sentence raises an inference of gross disproportionality. We thus turn to a comparative analysis of Gonzalez's sentence. *See Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring in part and concurring in the judgment); *Helm*, 463 U.S. at 291-92; *Ramirez*, 365 F.3d at 770.

B. *Intrajurisdictional and Interjurisdictional Comparisons*

**[10]** Comparison of Gonzalez's sentence with those imposed for other crimes in California and for the same crime in other states confirms our finding of gross disproportionality. *See Helm*, 463 U.S. at 298-300. Gonzalez's indeterminate sentence of 28 years to life is substantially more severe than penalties California imposes for far more serious crimes. For example, second degree murder is punishable by 15 years to life, CAL. PENAL CODE §§ 189, 190(a); voluntary manslaughter is punishable by three, six, or eleven years, CAL. PENAL CODE §§ 192(a), 193(a); kidnaping is punishable by three, five, or eight years, CAL. PENAL CODE §§ 207, 208; first degree robbery is punishable by three, six, or nine years, CAL. PENAL CODE §§ 211, 213(a)(1)(A); and rape is punishable by three, six, or eight years, CAL. PENAL CODE §§ 261, 264(a). The gross disparity between Gonzalez's sentence and those for many serious violent crimes in California underscores that the Three Strikes sentence imposed on Gonzalez is arbitrarily harsh and undeniably cruel.

**[11]** An interjurisdictional comparison similarly militates against California's position. At least eleven states require a

sex offender to renew registration within some statutorily fixed period after the initial registration but do not tie the registration requirement to the offender's birthday; Gonzalez's failure to update his sex offender registration within several days of his birthday thus would not have even qualified as a criminal offense in those states. *See* ARIZ. REV. STAT. ANN. § 13-3821(J); DEL. CODE tit. 11, § 4120(g); IDAHO CODE § 18-8307(5)(b); IOWA CODE § 692A.4; LA. REV. STAT. ANN. § 15:542.1; NEB. REV. STAT. § 29-4006(2); NEV. REV. STAT. § 179D.480; N.J. STAT. ANN. § 2C:7-2(e); N.Y. CORRECT. LAW § 168-f; PA. CONS. STAT. § 9796; WIS. STAT. § 301.45(3). In at least ten jurisdictions, a first registration offense is a misdemeanor. ALASKA STAT. § 11.56.840(b); D.C. CODE § 22-4015(a); IOWA CODE § 692A.7(1); ME. REV. STAT. ANN. tit. 34-A, § 11227; MD. CODE ANN., CRIM. PROC. § 11-721; MASS. GEN. LAWS ch. 6, § 178H(a)(1); MICH. COMP. LAWS §§ 28.725a(10), 28.729(2); OR. REV. STAT. § 181.599; S.C. CODE ANN. § 23-3-470(B)(1); W. VA. CODE § 15-12-8(b). In at least ten states, sex offender registration violations are subject to separate recidivist statutes but such statutes punish those who fail to comply with registration requirements only for terms of imprisonment ranging from one to ten years. ALASKA STAT. §§ 11.56.835(d), 12.55.125(e); COLO. REV. STAT. §§ 16-22-108(1)(b), 18-3-412.5(2)(A), 18-1.3-401(1)(a)(V)(A); 18-1.3-801(2); CONN. GEN. STAT. §§ 54-254, 53a-35a, 53a-40(c), (j); FLA. STAT. ANN. § 775.084 (1)(b) & 4(b)(3); MASS. GEN. LAWS ch. 6, § 178H, § 178F, ch. 279, § 25; MISS. CODE ANN. §§ 45-33-33(2); MO. ANN. STAT. §§ 589.425(1), 558.016(3), 558.011(1)(3); N.M. STAT. §§ 29-11A-4(L), (N), 31-18-15(A)(9), 31-18-17(B), (C); N.D. CENT. CODE §§ 12.1-32-15(9), 12.1-32-09(2)(c); TENN. CODE ANN. §§ 40-35-112(c)(5), 40-35-106(c), 40-35-107(c), 40-39-204(c), 40-39-208(b). An even larger number of states appear not to subject violators of sex offender registration requirements to separate recidivist statutes at all.

Several states *authorize* maximum recidivist sentences greater than ten years. *See* ALA. CODE §§ 13A-5-9(c), 15-20-

24; Ga. Code Ann. §§ 17-10-7(c), 42-1-12(n); Mont. Code Ann. §§ 46-23-507, 46-18-501-502; N.H. Rev. Stat. Ann. § 651-B:9(II), 651:6(II)(A), (III)(a); Okla. Stat. tit. 57, §§ 584(A)(5), 587, tit. 21, § 51.1(C); R.I. Gen. Laws §§ 11-37.1-14, 11-37.1-10, 12-19-21(a); S.D. Codified Laws §§ 22-24B-2, 22-7-8, 22-6-1(C) (2007). However, Texas appears to be the only state besides California that would *mandate* a sentence of 25 years or longer for a third felony offense, including a violation of a sex offender registration law. *See* Tex. Penal Code Ann. § 12.42(d). *See also Ramirez*, 365 F.3d at 772 ("[T]he [Three Strikes statute] is the most stringent in the nation."); *Carmony*, 26 Cal. Rptr. 3d at 376-78 (compiling statistics and concluding that "California is the only state that requires a life sentence with a mandatory prison term of 25 years prior to parole eligibility for a Three Strikes offender whose violation is noncompliance with the annual registration requirement." (emphasis omitted)).

[12] As we expect in our federal system, sex offender registration laws vary widely among the several states and are frequently changed.[12] We are thus hesitant to draw any conclusions from this survey; however, the fact that Gonzalez's sentence is at the margin of what the states have deemed an appropriate penalty for violation of sex offender registration laws supports our finding that Gonzalez's sentence is unusual. *See Helm*, 463 U.S. at 299 ("At the very least, therefore, it is clear that Helm could not have received such a severe sentence in 48 of the 50 States.").

V

[13] Weighing both the gravity of the commitment offense and Gonzalez's criminal history, we conclude that the sen-

---

[12]*See, e.g.*, *Rummel*, 445 U.S. at 282 ("Absent a constitutionally imposed uniformity inimical to traditional notions of federalism, some State will always bear the distinction of treating particular offenders more severely than any other State.").

tence imposed of 28 years to life imprisonment is grossly disproportionate to the "entirely passive, harmless, and technical violation of the registration law," *Carmony*, 26 Cal. Rptr. 3d at 372, and hence that it violates the Eighth Amendment. This conclusion, however, is insufficient to grant Gonzalez habeas relief. Indeed, even the California Court of Appeal's decision in *Carmony* does not control our disposition here, although we may look to it for its persuasive value. Under AEDPA, Gonzalez is entitled to habeas relief from this court only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.

Here, the Court of Appeal properly stated the objective factors of *Solem v. Helm* that guide gross disproportionality review. Moreover, the facts of Gonzalez's case are not "materially indistinguishable" from any decision of the United States Supreme Court. *See Williams*, 529 U.S. at 406. Thus, we cannot conclude that the state court's decision was contrary to clearly established law as determined by the Supreme Court.

**[14]** The Court of Appeal failed, however, to apply these factors reasonably to the facts of Gonzalez's case. After initially stating the proper factors, it relied on four general propositions to affirm Gonzalez's sentence. It found that (1) the California Legislature has determined that sex offenders pose a "continuing threat to society" and must therefore be readily available for police surveillance by registering under section 290, (2) Gonzalez has a "significant criminal history" revealing that he "is a recidivist who has resisted prior efforts at rehabilitation," (3) Gonzalez's sentence "is not unlike others

imposed under the Three Strikes law and upheld by the courts," and (4) Gonzalez's sentence "is consistent with the nationwide pattern of substantially increasing sentences for habitual criminals."

[15] The state court's reasoning is unsound. First, the Court of Appeal vastly overstated the annual registration requirement's relationship to police surveillance. The requirement that offenders update their addresses is indeed directly related to the need for police to be able to keep track of offenders but Gonzalez was *acquitted* of failing to update his address. The annual registration requirement set forth in § 290(a)(1)(D), by contrast, is merely a "backup measure" to ensure that police have current information. *See Carmony*, 26 Cal. Rptr. 3d at 374. A violation of § 290(a)(1)(D) "by itself, pose[s] no danger to society." *Cluff*, 105 Cal. Rptr. 2d at 86. The California courts have thus, as noted above, distinguished between violations of § 290(a)(1)(D) and § 290(a)(1)(A).

[16] Second, we agree with the California Court of Appeal that Gonzalez's criminal history is not insignificant. However, Gonzalez's criminal history alone cannot support a sentence of 28 years to life imprisonment. The triggering offense in this case is "remote from and bear[s] no relation to the current offense and the current offense reveals no tendency to commit additional offenses that pose a threat to public safety." *Carmony*, 26 Cal. Rptr. 3d at 375. As a result, imposition of a Three Strikes sentence in this case is not rationally related to California's interest in deterring recidivism.

Third and contrary to the Court of Appeal's assertion, Gonzalez's sentence appears to be unlike sentences imposed for other violations of § 290(a)(1)(D). For example, in *Cluff*, the Court of Appeal held that the trial court had abused its discretion in refusing to strike prior convictions when sentencing a defendant for failure to annually update his registration, 105 Cal. Rptr. 2d at 87-88, and in *Carmony*, the Court of Appeal held that imposition of a 25 years to life sentence for failure

to update registration annually constituted cruel and unusual punishment under both the state and federal Constitutions, 26 Cal. Rptr. 3d 365. Finally, while there may well be a general trend toward more severe penalties for recidivist offenders, Gonzalez's sentence appears to be more severe than the maximum penalty available for similar offenses in all but one other state.

The state court's analysis resulted in an unreasonable application of the Supreme Court's Eighth Amendment jurisprudence. The imposition of a 28 years to life sentence for failure to update a sex offender registration within five working days of the registrant's birthday in this case is more extreme than the imposition of a sentence of life without parole for utterance of a no account check in *Helm.* In that case, the Supreme Court underscored that uttering a no account check was "one of the most passive felonies a person could commit . . . involv[ing] neither violence nor threat of violence to any person." *Helm,* 463 U.S. at 296. Here, Gonzalez's failure to update his sex offender registration annually is a crime of omission, which is by definition *the* most passive felony a person could commit, and one that California courts have characterized as a "harmless, and technical violation of the registration law." *Carmony*, 26 Cal. Rptr. 3d at 372. Indeed, the California Court of Appeal specifically held that a violation of § 290(a)(1)(D) is "less serious than the offense of uttering a no-account check committed by the defendant in [*Helm*]." *Id.*[13]

Although *Solem* remains the only Supreme Court decision finding a sentence grossly disproportionate to the triggering offense, none of the other Supreme Court decisions upholding

---

[13]In fact in *Carmony*, the court found that "[the defendant's] failure to register was completely harmless and no worse than a breach of an overtime parking ordinance," 26 Cal. Rptr. 3d at 374, a reference to *Rummel's* "extreme example [of] a legislature [making] overtime parking a felony punishable by life imprisonment." *See Rummel,* 445 U.S. at 274 n.11.

sentences for a term of years—*Rummel* (false pretenses), *Harmelin* (drug possession), *Ewing* (grand theft) and *Lockyer* (petty theft)—involved regulatory offenses. Each of the property and drug crimes involved in those cases imposed a readily ascertainable social harm, in sharp contrast to the "harmless, and technical violation" committed by Gonzalez.

In addition, in the four Supreme Court decisions upholding sentences for a term of years, the defendant's criminal history was directly related to the triggering offense, evincing a clear pattern of recidivism. In *Rummel* the triggering offense of obtaining $120.75 by false pretenses was related to past convictions for fraudulently using a credit card and passing a forged check. In *Ewing*, the triggering offense of felony grand theft was related to prior convictions for theft, grand theft auto, burglary, trespassing, and robbery. In *Andrade,* the triggering offenses of two petty theft convictions were related to prior convictions for misdemeanor theft and residential burglary. Here, Gonzalez's failure to update his sex offender registration is categorically different from his past criminal conduct and does not demonstrate any recidivist tendency toward violent crime or sex offenses. *See Cluff*, 105 Cal. Rptr. 2d at 87.

**[17]** The disparity between Gonzales's technical violation of a regulatory crime of omission and the 28 years to life sentence imposed is so extreme that the state court could uphold the constitutionality of the sentence only by reading the "grossly disproportionate" standard out of federal law. The court in *Carmony* concluded that "[i]t is beyond dispute that a life sentence is grossly disproportionate to the [technical failure to register]." 26 Cal. Rptr. 3d at 374. We agree. The state court's application of the gross disproportionality principle, clearly established by the holding of *Solem v. Helm* and reaffirmed by *Lockyer v. Andrade*, was objectively unreasonable.

## VI

**[18]** The judgment of the district court is REVERSED, and we REMAND with instructions to grant the petition.

REVERSED and REMANDED.