, NOONAN, Circuit Judge,
concurring and dissenting:
First lawyer: “His sentence is imprisonment. Twenty-five years to life.”
Second lawyer: “That’s pretty standard.”
First lawyer: “It depends on the crime. Crosby’s crime was failing to let the state know of his change of address. The maximum penalty for this offense by itself is three years.”
Second lawyer: “So he was a recidivist. He had already committed two serious felonies. This was his third strike. Naturally, the penalty is sharper.”
First lawyer: “The penalty has been enormously enlarged. The key to constitutional sentencing is proportionality. The sentence imposed on Crosby is out of all proportion to his failure to report his change of address. Violent crimes such as robbery and voluntary manslaughter draw lesser punishment. Even rape, the most brutal of sex crimes, would not by itself draw this kind of penalty. How can it be that an offense which in itself is passive, which in itself harms no one, will justify incarceration up to the end of Crosby’s life?”
This hypothetical conversation assumes that governing law on the subject was established by the United States Supreme Court, notably in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The state of California does not share this view. The state bases its position on quotations from Ewing v. California, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003).
In Ewing, Justice O’Connor delivered what the official report describes as “an opinion.” It was concurred in by two members of the Court, Chief Justice Rehnquist and Justice Kennedy. Justice Scalia and Justice Thomas, who did not find the Eighth Amendment applicable, concurred in the judgment reached by the three. Justice Stevens, Justice Souter, Justice Ginsburg, and Justice Breyer dissented.
In oral argument in the present case, the state of California asserted that footnote 2 of Justice O’Connor’s three-justice opinion stated controlling law. I quote *796 from its responses to questions from our court:
Assistant Attorney General: More importantly, and frankly, this was a flaw in Gonzalez [v. Duncan, 551 F.3d 875 (9th Cir.2008) ] as well, but this court doesn’t actually have to decide whether Gonzalez was wrong, it’s enough that this court recognizes its job is simply to determine what a state court could have interpreted Ewing to mean, what any, what some fairminded jurist could think the case means, and the problem fundamentally is that over and over, the emphasis by petitioner is, my offense really wasn’t that bad. Yeah, it was a felony, but it really isn’t that bad. The problem, and, going on Gonzalez v. Duncan the argument that, well, this offense doesn’t really show a particular type of recidivism. None of that matters. Footnote 2 in Ewing v. California says flat-out, “the California legislature therefore made a deliberate policy decision that the gravity of the new felony should not be a determinative factor in triggering the application of the three strikes law. Neither the Eighth Amendment nor this court’s precedent forecloses that legislative choice.” In other words—
The court: Where are you quoting that? Assistant Attorney General: That is footnote 2 of Ewing v. California, Your Honor. In other words, a fairminded jurist could decide that under United States Supreme Court precedent, it is irrelevant how the felony looks standing alone. Rather, the very fact that before you commit that felony, you had at least two prior serious or violent felonies is enough to make it grave enough, under the Eighth Amendment, for a life term. No amount of ignoring that language is going to work. Gonzalez unfortunately didn’t cite that language either. Gonzalez spent a lot of time talking about, you know, this particular offense, and just ignored the language. I don’t know how—
The court: If Gonzalez had followed that, they would have come out in favor of the state?
Assistant Attorney General: I’m sorry?
The court: You’re saying if Gonzalez had been correctly decided, it would have come out in favor of the state?
Assistant Attorney General: Oh, to be sure, but the question for you isn’t simply whether Gonzalez is correct. Rather, it’s wrong, but the question for you is, could a state court have reasonably understood Ewing in a way that makes the offense, here, not so disproportionate to the punishment. And they could have, because the state court could have treated that language seriously in Ewing v. California.
Oral Argument at 12:52-15:46, available at http://www.ca9.uscourts.gov/media/.
In its brief to us, the state quotes from Justice O’Connor’s three-justice opinion in Ewing to the effect that it is “enough ” that California had “a reasonable basis for believing” that “a dramatically enhanced sentence for habitual felons” advanced the goals of the California justice system (citing Ewing, 538 U.S. at 28, 123 S.Ct. 1179, and adding italics to enough and dramatically). The state’s brief continues with quotation from the three-justice opinion, again acknowledging that the state is adding italics: “ ‘Nothing in the Eighth Amendment prohibits California from making [the] choice’ that the way to advance justice is outright ‘incapacitation’ of the recidivist.” (combining language quoted from Ewing at 25, 123 S.Ct. 1179 with the state’s argument). The force of this remarkable contention appears to be that there is no limit to the punishment that *797 the state may prescribe for any recidivist. It is hard to believe that the three-justice opinion was intended to lift all restraint on the state’s reaction to recidivism. In California’s sweeping gloss, proportionality in sentencing a recidivist has been eliminated. The repeat felon, however technical his felony, is to be “incapacitated.” With a severity worthy of Sparta, the state of California will bring to book those who thrice fall afoul of any felony provision in its legislation.
I do not believe that the humane restraint of the Eighth Amendment has been so removed from its role in measuring the proportion of the penalty to the offense.
I concur in the remainder of the majority’s opinion. I note that one standard referenced in it is that of “any fair-minded judge.” The standard is similar to the standard of “any reasonable person.” It is an objective standard. In disagreeing with a colleague as to whether such a standard is met, a judge is not impugning the reason or the fair-mindedness of the colleague with whom the judge disagrees because the objective standard has not been met.