Filed 3/11/14  P. v. Abdul-Malik CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>ZAKEE SHAKIR ABDUL-MALIK,<br><br>　　　Defendant and Appellant. | B248990<br><br>(Los Angeles County Super. Ct. No. BA378199) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall, Judge.  Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Seth P. McCutcheon, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant and appellant Zakee Shakir Abdul-Malik was convicted by jury of three counts of perjury by declaration in violation of Penal Code section 118, subdivision (a).[1] In a separate proceeding, the trial court found defendant had suffered two prior convictions for rape in violation of section 261, subdivision (a)(2), within the meaning of the three strikes law.  (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i).)

Defendant was sentenced to 25 years to life in count 1 pursuant to the three strikes law.  The trial court dismissed one prior strike conviction for purposes of counts 2 and 3, imposing consecutive terms of two years for both counts, for a total sentence of 29 years to life.  Credit was given for 179 days in custody and 179 days of conduct credits, for a total of 358 days.

Defendant timely appealed the judgment.  On October 16, 2012, this court ordered the judgment modified to reflect 454 days of presentence custody credits, consisting of 310 actual days and 144 days of conduct credit.  We also remanded the case to the trial court for resentencing on counts 2 and 3 under the determinate sentencing law.

The trial court sentenced defendant to an indeterminate term of 25 years to life in prison for count 1, consecutive terms of 4 years in count 2, and 2 years in count 3, for a total of 31 years to life in state prison.

Defendant again appealed.  He contends the sentence of 31 years to life is cruel and unusual punishment in violation of the Eighth Amendment.  We affirm the judgment.

## FACTS

Defendant, a convicted sex offender subject to registration under section 290, received Section 8 housing assistance since 2003.  In his applications for Section 8 assistance in 2008, 2009, and 2010, defendant falsely stated under penalty of perjury that he was not required to register as a sex offender.  Defendant received $34,305 in funding between 2008 and 2010 as a result of his false statements.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

Defendant was previously convicted of misdemeanor assault with a deadly weapon against his then girlfriend in 1972. In 1979, he pleaded guilty to misdemeanor battery, after being charged with rape by force. In 1982, he was convicted of rape by force and sentenced to eight years in prison. In 1989, just after his discharge from parole in connection with the 1982 conviction, defendant was again convicted of rape by force and sentenced to eight years in prison. In 1995, while on parole, he was convicted of misdemeanor battery.

At the resentencing hearing for the current offenses, defendant moved to strike his priors and thereby shorten his sentence.[2] The trial court granted the motion as to counts 2 and 3 but denied it as to count 1. In doing so, the trial court discussed the issue of cruel and unusual punishment.

"THE COURT: The other right that has to be balanced into all of this is the cruel and unusual punishment. As I indicated when I sentenced Mr. Abdul-Malik last time, if I imposed three consecutive 75-year to life sentences, which incidentally, the Court of Appeal said I would have been well within my right to do, or three consecutive 25 to life sentences, giving him 75 years to life, that really would have been the moral equivalent of an LWOP. And in a case where most defendants are placed on probation and forced to pay restitution, that is disproportionate punishment and would probably fall within the range of cruel and unusual punishment. *Reyes* [*v.*] *Brown*, a 2005 case from the 9th Circuit, 399 [F.3d] 964, in which the 9th Circuit held that imposing a 25-year to life sentence on a [section] 118 violation was in fact cruel and unusual punishment as a matter of law.

"The second factor that has to be examined in this is the interest of society as represented by the People. And I think that we are engaging in a little bit of revisionist history and a little bit of sort of minimizing what this case was all about.

---

[2] Defendant does not challenge the trial court's exercise of discretion in denying his motion to strike.

"When Mr. Abdul-Malik was sentenced initially, his position outlined in letters and statements and everything else that he had submitted was not that he was concerned about the family and all the rest of that. But it seems to be something that has come up in prison, but rather, that he felt that he wasn't guilty of the underlying rape charges, and he felt that he had paid his debt to society and therefore, he was justified in not reporting that and reporting the fact that he was a sex registrant on the Section 8 housing. The fact that he has now come up with a different story doesn't really impress me very much, I have to say. I think that his initial take on that was why he acted the way he did, and I'm going to act on that.

"Additionally, there has to be a balance between leaving the prison authorities with the discretion to evaluate Mr. Abdul-Malik when he's reached a period in his life where the odds of him repeating any of his sexual offenses -- and the two rape charges are not the only ones -- whether he's gained enough insight into his behavior by that point to justify a release when he is of an age that is significantly older. And I'm going to impose a sentence that ensures that he stays in until he is old enough that he may be safely trusted out in the community, but allows the parole authorities the flexibility they may desire to release him when he reached that point.

"Now, I spent the last couple of weeks going through this file, the same as I did the first time I sentenced him, and I've read every document that was filed in this case. The documents contain fairly substantial descriptions of Mr. Abdul-Malik's prior strike offenses. These were extremely violent rapes that go beyond the normal violence, if we can use that phrase, encountered in a rape. In the second one, the victim received substantial injury and suffered significant emotional injuries as well. There is very little record of what occurred in the first, because the records had been destroyed. But the brief discussion that was contained in the probation report has no suggestions that it was any less violent that the second. The rapes were fairly remote. The first strike occurred on July 1, 1982. The second occurred on November 13, 1989; both of them more than 20

4

years old.  In the overall scheme of ruling on *Romero*[3] motions, that would augur in favor of striking them; however, the fact that the strikes occurred approximately seven years apart is a factor that militates against him, because Mr. Abdul Malik was in prison for most of that time.  Both of these prior offenses were extremely violent, as I indicated.

"Another factor that the Court has to look at is whether these priors occurred in a single period of aberrant behavior.  They didn't.  The nature of the victim and the type of assault which occurred on August 26, 1979.  The type of victim continued to the two allegations which underlay the 2006 misdemeanor conviction which was reversed.  I'm not going to consider that for any other reason, because the conviction was reversed.  But it was reversed on a technical issue.  But I think that the types of victim involved in that, or alleged victim involved, that is something that's relevant.

"I think it's also significant according to the registration records that in 2003, [defendant] was accused of attempts to inveigle girls, again, who met the same profile, into working with him for an escort service.  What this tells me is that Mr. Abdul-Malik shows absolutely, over the course of his life, a long period of time, has shown no insight into his behavior as to what is best termed to be a sexual predator.  And I think the best evidence that this hasn't changed or at least it hadn't changed up until the time of the commission of this offense, and one of the facts that drives my feeling is -- of this matter is that Mr. Abdul Malik chose to use the illegally obtained Section 8 housing voucher to move in right next to a child case center. . . .  And it's this factor that causes me to be utterly unwilling to strike the strikes as to Count 1.  As far as I can tell, Mr. Abdul Malik is still a sexual predator.  I see nothing to indicate the contrary.  And again, the fact that knowing his history, he would choose to lie about his sexual history and then use that to move next to a child care center, to me is just inconceivable.

"The other factor that the court has to look at is whether the prior convictions arose out of the same act.  They did not."

---

[3]  *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

5

Defendant interrupted the trial court at that point in the proceeding, explaining that he had never beaten or raped the victims. He stated that he had consensual sexual intercourse with both victims, and that he "just didn't know these girls well enough." He asserted that the first woman was beaten by her sister who then framed him, and in the second conviction, the district attorney knew he had a prior conviction so he "made" the victim come to court and testify against defendant. He denied being a violent predator.

After defendant's lengthy statement, the trial court pronounced the sentence. Defense counsel did not object to the sentence on the ground of cruel and unusual punishment.

## DISCUSSION

Defendant's contention that his 31 years to life sentence is so grossly disproportionate to his crimes that it constitutes cruel and unusual punishment in violation of the Eighth Amendment is without merit.[4]

Preliminarily, we agree with the Attorney General that defendant forfeited the claim on appeal by failing to raise it below. Defendant's assertion that the issue was preserved because the trial court considered whether the sentence rose to the level of cruel and unusual punishment at the resentencing hearing is unavailing. The law requires that defendant specifically object to his sentence as a violation of the Eighth Amendment, which defendant concedes he failed to do. (*In re Seaton* (2004) 34 Cal.4th 193, 197-198 ["'[T]he failure to object to errors committed at trial relieves the reviewing court of the obligation to consider those errors on appeal.' [Citations.] This applies to claims based on statutory violations, as well as claims based on violations of fundamental constitutional rights. [Citations.]"].)

To avoid forfeiture, defendant alternately argues that his counsel provided ineffective assistance by failing to object, which necessitates review on the merits.

---

[4] Defendant does not contend that his sentence violates the state Constitution.

6

(*People v. Williams* (1998) 61 Cal.App.4th 649, 657.) We conclude that, even if the issue had been preserved for appeal, the trial court could constitutionally impose the 31-year to life sentence in compliance with state law in accordance with section 667, subdivision (e)(2)(A)(ii), such that there is not a reasonable probability defendant would have obtained a more favorable result had his counsel objected. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003 [reversal on the ground of ineffective assistance of counsel requires the defendant to establish counsel's performance did not meet the standard to be expected of a reasonably competent attorney and there is a reasonable probability the defendant would have obtained a more favorable result absent counsel's shortcomings].)

The Eighth Amendment prohibits only those sentences that are grossly disproportionate to the crime. (*Ewing v. California* (2003) 538 U.S. 11, 23-24 (*Ewing*).) Three factors are considered when determining whether a sentence is proportionate to the offense and the defendant's circumstances such that it does or does not constitute cruel and unusual punishment: (1) the gravity of the offense and the harshness of the penalty; (2) sentences imposed on other criminals in the same jurisdiction; and (3) sentences imposed for the same crime in other jurisdictions. (*Id*. at p. 22.) Here, defendant's sole contention is that the punishment is unconstitutional as applied to him, so we consider only the first factor—the nature of the offense and the offender.

We find no merit in defendant's argument that his current offenses are comparatively trivial, like the triggering offenses in *People v. Carmony* (2005) 127 Cal.App.4th 1066 (*Carmony II*) and *Gonzalez v. Duncan* (9th Cir. 2008) 551 F.3d 875 (*Gonzalez*). In *Carmony II*, the defendant failed to update his registration as a sex offender within five days of his birthday (former § 290, subd. (a)(1)(C)) but had accurately registered the required information a month before. There was no change in the information in the intervening period, and the defendant's parole officer was aware there had been no changes. The appellate court classified the offense as a "passive" omission and not an act that either "evade[d] or [was] intend[ed] to evade law enforcement officers." (*Carmony II*, *supra*, at p. 1078.) It held that the defendant's 25

years to life sentence was cruel and unusual punishment under the circumstances. (*Id.* at p. 1089.)

In *Gonzalez*, the defendant violated former section 290, subdivision (a)(1)(D), another provision requiring registration as a sex offender within five days of the defendant's birthday. The court of appeals described the purpose of the law as "only tangentially related to the state's interest in ensuring that sex offenders are available for police surveillance," and "merely a 'backup measure to ensure that authorities have current accurate information.' [Citation.]" (*Gonzalez*, *supra*, 551 F.3d at p. 884.) Gonzalez had been found not guilty of violating the reporting requirements of section 290, subdivision (a)(1)(A), which was promulgated for the purpose of "prevent[ing] 'recidivism in sex offenders' by assuring they are 'available for police surveillance.' [Citation.]" (*Gonzalez*, *supra*, at p. 884.) Taking into account the not guilty verdict, the court "adopt[ed] the jury's implicit determination that Gonzalez was living at his registered address throughout the relevant time period in this case." (*Ibid.*) Considering the gravity of the offense and the fact that Gonzalez had updated his information both nine months before and three months after the relevant time period, the court was "unable to discern any actual harm resulting from [the violation]." (*Ibid.*) It therefore held Gonzalez's 28 years to life sentence was cruel and unusual punishment. (*Id.* at p. 891.)

Here, defendant did not simply fail to act as the defendants in *Carmony II* and *Gonzalez* did. He affirmatively lied about his previous offenses to gain a government benefit. Cognizable harm to the state occurred when defendant perjured himself to obtain subsidized housing. Moreover, it is clear that defendant acted purposefully, as he perjured himself on not one, but *three*, separate occasions. At the resentencing hearing, defendant minimized his past crimes and ignored his responsibility for them, displaying a callous disregard for their seriousness. In light of these circumstances, his decision not to disclose his sex offender status when required by law "may properly be viewed as an indicator of potentially significant future dangerousness." (*In re Coley* (2012) 55 Cal.4th 524, 562 (*Coley*).)

The sentence imposed under the three strikes law is often dependent on the trial court's exercise of discretion in determining whether to strike any of the serious or violent prior convictions, such that it is appropriate to rely on the trial court's findings and reasoning when evaluating a claim that the punishment is cruel and unusual. (*Coley*, *supra*, 55 Cal.4th at pp. 559-561) In this case, the trial court considered the two violent sexual assaults that resulted in defendant's prior strike convictions, along with his other crimes. Although the rapes are remote from the current offenses, they occurred many years apart, illustrating that a significant lapse of time is no indication that defendant has reformed. Defendant was also convicted of assault with a deadly weapon and battery against women on two other occasions. As the trial court noted, evidence of defendant's current state of mind does not weigh in his favor. Defendant's lengthy statements at the resentencing hearing show that he does not acknowledge the gravity of his past offenses or take responsibility for them. His powers of introspection do not appear to have developed over time. Finally, defendant is a repeat offender whom the Legislature may punish more severely than it punishes a first time offender, and his recidivism is a relevant consideration that also weighs against him. (*Ewing*, *supra*, 538 U.S. at pp. 24-26, 29 [25 years to life sentence not cruel and unusual punishment where triggering offense of felony grand theft of golf clubs was related to prior convictions for theft, grand theft auto, burglary, trespassing, and robbery].)

Having considered defendant's nature and the nature of his offense, we conclude that his 31 years to life sentence does not violate the constitutional prohibition against cruel and unusual punishment.

## DISPOSITION

We affirm the judgment.

KRIEGLER, J.

We concur:

MOSK, Acting P. J.

MINK, J.*

---