Filed 12/3/14  P. v. Jordan CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>  v.<br><br>ANTOINE DENELL JORDAN,<br><br>      Defendant and Appellant. | B249279<br><br>(Los Angeles County<br> Super. Ct. No. BA391352) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Edmund Willcox Clarke, Jr., Judge.  Affirmed.

Carlo A. Spiga for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell, Douglas L. Wilson and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

In 1983, defendant and appellant Antoine Denell Jordan was convicted by jury of 26 separate felonies as a result of a notoriously violent crime spree which included rape, kidnapping and robbery of women on and near the University of Southern California campus in 1981. He was sentenced to 44 years in state prison. Shortly after he was sentenced, defendant committed sodomy by force on another inmate and was convicted of that felony in 1985. Defendant was released on parole in 2005. Because of his many convictions of sex offenses, defendant was required to register as a sex offender pursuant to the Sex Offender Registration Act (hereafter "Act"; Pen. Code, § 290 et seq.).[1]

Following his release, defendant twice committed parole violations and was returned to prison, each time for a period of six months. Upon his release on the second parole violation, defendant registered an address in Los Angeles as his residence. In late 2011, an officer with the Los Angeles Police Department discovered defendant had been living for several years at different addresses, including one in Anaheim, and one in Fullerton. Defendant had never registered the changes of address or the multiple residences, or identified vehicles owned and registered by him at those addresses as required under the Act. Defendant told the investigating officer he did not register those addresses because he did not want his wife, who lived there, to be harassed as a result of his status as a registered sex offender.

Defendant was thereafter charged with and convicted by jury of eight felony violations of the Act. The court sentenced defendant as a third-strike offender to an aggregate state prison term of 25 years to life, plus 16 months. Defendant contends his sentence is grossly disproportionate to his present offenses which were merely regulatory violations, and his sentence was based primarily on his past criminal record. Defendant argues his sentence therefore violates the Eighth Amendment's proscription against cruel and unusual punishment and the double jeopardy clause of the Fifth Amendment.

---

[1] All further undesignated section references are to the Penal Code.

Defendant further contends the trial court applied the incorrect legal standard, and abused its discretion, in denying his *Romero*[2] motion. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant has not raised a substantial evidence question. We therefore summarize only those facts and procedural issues material to our discussion, as well as some additional facts for context.

In 1983, defendant was convicted by jury of 26 felonies, including several rapes and robberies against multiple victims, some involving the use of a deadly weapon. He received a 44-year prison sentence. In 1985, defendant was convicted of one count of sodomy by force arising from an assault on another inmate committed the day after he received his 44-year sentence, for which he was sentenced to an additional three years.

Defendant was released from prison in 2005 on parole. In 2006, less than a year after his release, defendant was arrested and given a six-month term for failing to attend three sessions of a parolee outpatient program in violation of the terms of his parole. Then, in 2008, defendant was again arrested for violating parole based on several instances of violating curfew and for possession of sexually explicit material on his cell phone. Defendant was given another six-month term.

Following his release, defendant registered an address on South 2nd Avenue in the City of Los Angeles as his residence in February 2009, and thereafter re-registered that address as his residence in November 2009 and November 2010. On each of those occasions, defendant initialed the form acknowledging his obligation under the Act to report changes of address and multiple residences.

On November 8, 2011, defendant went to the police station near his Los Angeles address for his annual registration. Officer Bryan Swaim of the Los Angeles Police Department Sex Crimes Unit met with defendant to complete the registration, as he had in November of 2009 and 2010. Again, defendant registered *only* the Los Angeles

---

[2]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

address, did not indicate he had moved or had multiple residences, and did not identify or register any vehicles.

During the registration process, which included taking an updated photograph and fingerprints of defendant, Officer Swaim noticed defendant was wearing a "really nice" motorcycle jacket. He noticed defendant had never registered any vehicles in his name, so he asked defendant about his means of transportation. Defendant said he was riding a motorcycle that belonged to his brother. Officer Swaim went outside with defendant and took a photograph of the motorcycle and its license plate number. When they went back inside, Officer Swaim asked defendant again about the motorcycle. Defendant admitted the motorcycle belonged to him.

After defendant completed the registration process and left the station, Officer Swaim made some inquiries regarding the motorcycle. Officer Swaim discovered the motorcycle was registered with the Department of Motor Vehicles (DMV) to defendant at an address in the City of Fullerton which had never been registered by defendant. Upon further investigation, Officer Swaim discovered the following additional information that had never been disclosed by defendant to law enforcement during his annual registration appearances or at any other time: a second motorcycle and two vehicles (a Chrysler and a Chevrolet Suburban) registered with the DMV in defendant's name at the Fullerton address; a DMV disabled placard listing defendant's Fullerton address; a cable television account in defendant's name at the Fullerton address; and another address listed with the DMV in the City of Anaheim (apparently another former residence).

Officer Swaim contacted defendant and asked him to come back to the station to discuss the new information. Defendant complied and, during an interview at the station, conceded that he "split" his time between the Los Angeles address (his sister's apartment) and the Fullerton address. He said he kept some of his belongings at the Fullerton address and received mail there. The vehicles were also registered to him at the Fullerton address. Defendant said he did not report the Fullerton address because he did not want people coming to the door and bothering his wife on account of his status as a registered sex offender. Defendant explained he was in Fullerton every day but only

4

slept there a couple nights a week. Defendant was arrested on multiple registration violations.

After his arrest, defendant registered his Fullerton address with law enforcement in the City of Fullerton on November 15, 2011.

In 2012, defendant was charged, by amended information, with three counts of failure by a convicted sex offender to register multiple residences (§ 290.010[3]; counts 2, 5 and 7), two counts of failure by a convicted sex offender to file a change of address (§ 290.013, subd. (a)[4]; counts 1 and 4), and three counts of failure by a convicted sex offender to provide accurate registration information (§ 290.015, subd. (a)[5]; counts 3, 6 and 8).

As to all counts, it was specially alleged defendant had suffered 27 prior felony convictions within the meaning of the "Three Strikes" law. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) The prior strikes included eight robberies (§ 211), one attempted robbery (§§ 211, 664), one kidnapping (§ 207), five attempted kidnappings (§§ 207, 664), three rapes (§ 261, subd. (a)(2)), two rapes in concert (§§ 261, subd. (a)(2),

---

[3]     Section 290.010 provides in relevant part: "If the person who is registering has more than one residence address at which he or she regularly resides, he or she shall register in accordance with the Act in each of the jurisdictions in which he or she regularly resides, regardless of the number of days or nights spent there."

[4]     Section 290.013, subdivision (a) provides in relevant part: "Any person who was last registered at a residence address pursuant to the Act who changes his or her residence address, whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state, shall, in person, within five working days of the move, inform the law enforcement agency or agencies with which he or she last registered of the move."

[5]     Section 290.015, subdivision (a) provides in relevant part: "A person who is subject to the Act shall register, or reregister if he or she has previously registered, upon release from incarceration, placement, commitment, or release on probation pursuant to subdivision (b) of Section 290." The statute also enumerates the information to be disclosed during the registration process, including "the license plate number of any vehicle owned by, regularly driven by, or registered in the name" of the registrant.

5

264.1), five oral copulations (§ 288a), one attempted sodomy (§§ 286, 664) and one sodomy (§ 286).  It was further alleged defendant had suffered five prior prison terms. (§ 667.5.)  Defendant's criminal history also included convictions for grand theft and burglary in 1980 that were not alleged as qualifying strikes.

Defendant pled not guilty and denied the special allegations.

Trial by jury began in August 2012.  Officer Swaim testified to the above facts, and generally explained the registration process under the Act, including a sex offender's obligation to register on an annual basis or within five days of any change of address, and to identify all locations used as a residence and vehicle information.  The prosecution called several neighbors who testified to regularly seeing defendant at the Anaheim address for about a year, starting in 2009, including at a homeowners' association meeting.  Defendant's audiotaped interview with Officer Swaim was played for the jury.

Defendant's wife, Carmen Jordan, testified for the defense.  She stated defendant resided at his registered Los Angeles address, which was his sister's residence, but did come over to her residence in Fullerton five days a week to help take care of their two children while she worked.  She said defendant would stay overnight sometimes on the weekends.  She explained that only she was on the lease agreement for the Fullerton residence.  She admitted defendant received his paychecks and some mail at the Fullerton address, and that their vehicles were registered there.  Mrs. Jordan also conceded that when she was living at the Anaheim address, defendant stayed there on a similar schedule.  A mutual friend of defendant and his sister also testified that she regularly visited (several times a week) at the Los Angeles address and knew defendant lived there. She said defendant slept on a pullout bed in the living room, and was often around to help her with appointments and other matters because she suffered from congestive heart failure.  Defendant did not testify in his own defense.

The jury found defendant guilty on all eight counts.

The bifurcated jury trial on the prior strikes and prison priors took place on August 15, 2012.  The jury found true that defendant had previously been convicted of 26 felonies within the meaning of the Three Strikes law, and had suffered five prison priors.

6

The record is not clear why one of the attempted kidnapping priors alleged in the information was not submitted to the jury for consideration.

The parties submitted lengthy sentencing memoranda and the court heard argument over the course of two days, including a personal statement by defendant. The court granted the prosecution's motion to strike the prison priors and accepted the prosecution's stipulation that counts 2, 4, 5, 6 and 7 were properly stayed pursuant to section 654.

The court sentenced defendant as a third-strike offender and imposed a 25-to-life term on count 8, plus consecutive eight-month terms (one-third the midterm) on each of counts 1 and 3. The court imposed and stayed eight-month terms on counts 2, 4, 5, 6 and 7. The court awarded defendant 941 days of custody credits, and imposed various fines and fees.

This appeal followed.

## DISCUSSION

Defendant raises three arguments challenging the sentence imposed by the court: (1) the sentence violates the Eighth Amendment proscription against cruel and unusual punishment; (2) the sentence violates the double jeopardy clause of the Fifth Amendment; and (3) the court applied an incorrect legal standard in determining whether it had the discretion to strike any prior convictions within the meaning of the Three Strikes law, and otherwise abused its discretion in denying his *Romero* motion. We find no error.

### 1.     Eighth Amendment

Defendant contends his state prison sentence of 25 years to life, plus 16 months, is grossly disproportionate to his present registration offenses in violation of the Eighth Amendment proscription against cruel and unusual punishment. Defendant argues his violations of the Act, while felonies, are victimless and essentially "regulatory" and, as such, do not warrant a life sentence.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.' [Citation.]"

(*Ewing v. California* (2003) 538 U.S. 11, 20 (*Ewing*) [affirming sentence of 25 years to life imposed on a third-strike offender convicted of felony grand theft for the theft of $1,200 worth of merchandise].) The Eighth Amendment prohibits only a sentence that is "grossly disproportionate" to the severity of the charged crime(s). (*Ewing,* at p. 21.) Outside the context of a capital sentence, " 'successful challenges to the proportionality of particular sentences have been exceedingly rare.' [Citation.]" (*Ibid*.)

In arguing his life sentence is grossly disproportionate to the registration violations of which he was convicted, defendant relies heavily on *People v. Carmony* (2005) 127 Cal.App.4th 1066 (*Carmony II*) and *Gonzalez v. Duncan* (9th Cir. 2008) 551 F.3d 875 (*Gonzalez*).

However, *Carmony II* and *Gonzalez* are factually dissimilar. In *Carmony II*, the defendant had registered his correct address just a month before his birthday, but then failed to register again within five days of his birthday as required by the Act. There was no change of information, and his parole officer and law enforcement had his correct address and other information as required by the Act. The third-strike sentence was found grossly disproportionate because the defendant "did not evade or intend to evade law enforcement officers" and his violation of the Act was "technical and harmless." (*Carmony II*, *supra*, 127 Cal.App.4th at p. 1078.) *Gonzalez* involved a similar technical violation, in which the defendant had continued to reside at his registered address, and updated his information on an annual basis, but had not done so within five days of his birthday. (*Gonzalez*, 551 F.3d at pp. 884-885.)

The facts here more squarely align with *In re Coley* (2012) 55 Cal.4th 524, in which our Supreme Court rejected the defendant's challenge to the imposition of a third-strike sentence for an alleged "technical" violation of the registration requirements of the Act, distinguishing both *Carmony II* and *Gonzalez*. "Some defendants—as in *Carmony II* and *Gonzalez—who* have properly registered their current address and whose overall conduct demonstrates a general good faith effort to comply with the sex offender registration requirements may commit this offense through a mere negligent oversight that does not adversely impact the fundamental purpose of the sex offender registration

8

regime.  Other defendants, however, may violate this statutory provision by intentionally failing to update their sex offender registration within five working days of their birthdays as part of a more general course of conduct that *demonstrates a deliberate general unwillingness to comply with the sex offender registration requirements.*  In analyzing a cruel and unusual punishment challenge to a sentence imposed upon a defendant convicted of this offense, a court may not simply look to the nature of the offense in the abstract, but must take into consideration all of the relevant specific circumstances under which the offense actually was committed."  (*In re Coley*, at p. 553, italics added.)

The defendant in *In re Coley* was released on parole in January 2001, but failed to register any address.  The defendant reported a residential address to the DMV and was arrested there in August 2001 for having failed to comply with the Act.  (*In re Coley*, *supra*, 55 Cal.4th at pp. 532-533.)  Given the defendant's lengthy criminal history, the trial court imposed a third-strike sentence which the Supreme Court upheld.  "Because the trial court found [the defendant] deliberately failed to register as a sex offender even though he knew he had an obligation to do so, [the defendant's] triggering offense demonstrated that, notwithstanding the significant punishment that he had incurred as a result of his prior serious and violent felony convictions, [the defendant] was still intentionally unwilling to comply with important legal requirements prescribed by the state's criminal laws.  As a consequence, [the defendant's] current criminal conduct and conviction clearly bore a rational and substantial relationship to the antirecidivist purposes of the Three Strikes law."  (*In re Coley*, at pp. 561-562.)

The court went on to explain that "in determining the gravity of [the defendant's] conduct in evaluating an Eighth Amendment challenge to a sentence imposed under a recidivist sentencing statute, we must consider not only [the defendant's] triggering offense but also the nature and extent of [the defendant's] criminal history.  [Citation.]  In light of the particularly heinous nature of [the defendant's] prior criminal activity [citation], [the defendant's] present offense—*efectting a deliberate decision by [the defendant's] to refuse to comply with an important legal obligation—may properly be*

*viewed as an indicator of potentially significant future dangerousness.* Taking into account both the circumstances of [the defendant's] triggering offense and [the defendant's] very serious criminal history, we conclude that the 25-year-to-life sentence imposed upon [the defendant] does not constitute cruel and unusual punishment in violation of the Eighth Amendment." (*In re Coley*, *supra*, 55 Cal.4th at p. 562, italics added.)

We find defendant also made a deliberate decision to refuse to comply with his registration obligations. Defendant intentionally did not register either the Fullerton or Anaheim address where he stayed on a daily basis to care for his two children, ostensibly because he did not want anyone to bother his wife about having a sex offender in the home. It is undisputed he knew of his obligations under the Act, but for at least two years, he deliberately registered only the Los Angeles address. He also did not provide any information regarding four separate vehicles he owned and drove on a regular basis, and lied to Officer Swaim when he was asked a direct question about his vehicle ownership. When considered in conjunction with defendant's significant and violent criminal history, the imposition of a third-strike sentence does not offend the Eighth Amendment. (*In re Coley*, *supra*, 55 Cal.4th at p. 562; accord, *Ewing*, *supra*, 538 U.S. at p. 29 [In weighing the gravity of a habitual offender's present offense, the court "must place on the scales not only [the] current felony, but also [the offender's] long history of felony recidivism. Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions."].)

## 2. Fifth Amendment

Defendant also contends his sentence is primarily intended to punish him a second time for his past crimes and therefore violates the double jeopardy clause of the Fifth Amendment.

Defendant's sentence does not offend the double jeopardy clause. "Recidivism has long been recognized as a legitimate basis for increased punishment." (*Ewing*, *supra*, 538 U.S. at p. 25.) The Supreme Court has repeatedly upheld state recidivism statutes and "rejected double jeopardy challenges because the enhanced punishment imposed for

the later offense 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.' [Citations.]" (*Witte v. United States* (1995) 515 U.S. 389, 400; accord, *Monge v. California* (1998) 524 U.S. 721, 728.)

Defendant's sentence was not imposed as an additional penalty for prior crimes. Defendant's sentence is the statutorily prescribed enhanced sentence for his current felonies which were properly considered *aggravated offenses* because of defendant's status as a recidivist with a lengthy and serious criminal history.

## 3.    *Romero* Motion

Finally, defendant argues the trial court applied the wrong standard in ruling on his *Romero* motion, and otherwise abused its discretion in refusing to grant defendant's motion, in whole or in part.

The record belies defendant's contention the court used an incorrect legal standard in denying his motion. Viewed in their totality, the court's comments accurately reflect the relevant standard articulated by the Supreme Court in both *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*) and *People v. Carmony* (2004) 33 Cal.4th 367 (*Carmony I*). In determining whether to grant or deny a *Romero* motion, the trial court " 'must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.] [¶] Thus, the three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Carmony I,* at pp. 377-378; accord, *Williams*, *supra*, at p. 161.)

Further, plaintiff has failed to show that in applying this standard, the trial court abused its discretion. Our review of the court's denial of defendant's *Romero* motion "is

11

subject to review under the deferential abuse of discretion standard." (*Carmony I*, *supra*, 33 Cal.4th at pp. 374, 376.)

The trial court considered the "nature and circumstances of [defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects." (*Williams*, *supra*, 17 Cal.4th at p. 161.) The court found to defendant's credit that he had assumed family responsibilities and made efforts at employment since his release. He also noted defendant's relative cooperation with authorities, but qualified that his level of "candor" at some points in the process was "subject to discussion." The court also found the current offenses were notably less serious than defendant's prior violent felonies. As for the remoteness factor stressed by defendant in his briefs, the court explained that the remoteness of his prior serious felonies was "somewhat undercut" by the fact defendant had been incarcerated for more than two decades.

As to aggravating factors, the court stated defendant unquestionably had a history of numerous and "very violent" offenses, many involving the use of weapons. The prior felonies occurred over a lengthy period of time, and consisted of "multiple predatory crimes" inflicted on multiple victims, "followed by another violent sexual offense" that occurred while defendant was in jail. We agree with the trial court's assessment that: "[I]t's hard to picture a more adverse set of strikes."

On the current charges, the court expressed its concern defendant had made "misrepresentations" in statements to the media reporting on his prosecution under the Act, including that he was trying to avoid the "hardship of registration," that he had been "sold out" by his lawyer on the earlier charges, that he had been "treated by the police and the court system unfairly," and that he was, in essence, a victim. The court found the statements indicated defendant was remorseless. The court emphasized there was no evidence defendant had expressed remorse for any of his crimes. The court stated that "despite the mitigating factors in his favor, [defendant] does fall within the spirit of the Three Strikes law."

The court plainly gave thoughtful consideration to the relevant criteria, and on balance, found defendant fell squarely within the letter and spirit of the Three Strikes law. We agree.

## DISPOSITION

The judgment of conviction is affirmed.


GRIMES, J.


We concur:

RUBIN, Acting P. J.



FLIER, J.